Daubenspeck, Adm'r, v. Biggs, Adm'r.

---

### DAUBENSPECK, ADM'R, v. BIGGS, ADM'R.

#### No. 8729.

EVIDENCE.—*Insufficiency of, to Sustain Finding.*—See evidence set out in opinion.

SAME.—*Antenuptial Agreement.—Husband's Interest in Estate of Wife.—*

Where the testimony to establish an antenuptial agreement, pleaded in bar of a recovery of the husband's interest in the estate of the wife, fails to show a contract in which the parties thereto mutually agreed to renounce or waive any right of inheritance in or to the property of each, such evidence is insufficient to establish such contract in relation to such interest, or prevent a recovery thereof.

SAME.—*Insufficiency of Evidence to Establish Gift.*—To constitute a valid gift by a husband of his interest in the property of his wife to her children, the evidence must show that he either delivered such property, or assigned his interest therein, to such children, or that he had made promises in reference thereto which he could not at any time legally revoke.

From the Miami Circuit Court.

*H. J. Shirk, J. Mitchell* and *W. E. Mowbray,* for appellant.

*J. L. Farrar, J. Farrar* and *S. D. Carpenter,* for appellee.

WOODS, J.—There is one question only presented by the record, and by the briefs filed on behalf of the appellant, in this case, and that is, whether the decision of the circuit court is sustained by sufficient evidence.

The appellee, as administrator of the estate of Julia Daubenspeck, filed in the court below an amended report for final settlement of his trust, showing a partial distribution of the surplus remaining after payment of claims against the estate, and bringing the remainder into court for the use of certain named heirs of the decedent.

The appellant, as administrator of the estate of John Daubenspeck, filed exceptions to the report, and upon the hearing the court found the report correct and approved the same.

The disputed question was, whether John Daubenspeck was entitled to any share in the estate of said Julia.

It was shown in evidence, that said John and Julia Daubenspeck were married and lived together as husband and wife until the death of Julia; that, at the time of their marriage, each had children by a former marriage, and that John survived his wife about two years.

Daubenspeck, Adm'r, v. Biggs, Adm'r.

It is clear that he was entitled to a share in his deceased wife's estate, unless he had in some way barred or waived the right given in such cases by the statutes of descent.

It is claimed that the right had been cut off by an antenuptial contract. Does the evidence show it? The testimony on this point is substantially as follows:

Solomon Denny testified, that he knew John and Julia Daubenspeck, and "had known them since 1867, up to the time of their death, and lived with them about two years; that they repeatedly told him about a contract made between them before marriage. They both told him that the old man came to see her one afternoon and talked the matter over. He finally proposed to marry her. The old man said to her that he hadn't any thing, and she turned around and said that she hadn't any thing, except what she had in the house, and a little money which belonged to the children. So then they made a proposition that if any thing turned up betwixt them, she was to keep what she had, for he hadn't any thing when he married her. It was during the two years I lived there. Something happened between them. They had some racket with his first children. They threatened to come up and throw her out of the house. She said she wanted the land, and was entitled to it; that the biggest part of it was paid for with her children's money. She said she wanted a warranty deed for it, and she got it; that he hadn't any thing, and she hadn't any thing, when they were married."

On cross-examination this witness said: "Nothing was said about the real estate. He said that he came over in the afternoon, and it was agreed that if any thing turned up betwixt them, she should have her own, as he hadn't any thing. That was about the amount of the conversation. The agreement was made on Sunday afternoon before they were married. I think it was Sunday; am not

certain. It was on Sunday or Saturday afternoon, and they were married on the following Thursday. I remember the time when John made the deed to Julia. He said he wanted her to have the land, for she was entitled to it, because the money belonged to her children."

William Sutton testified : " I was acquainted with John Daubenspeck. He told me that the property belonged to her. I went there to buy stock, and I asked him why they had their property in that way ; and he said it was according to a contract made before their marriage."

John J. Dunn testified : " After the death of Julia Daubenspeck, John Daubenspeck told me that all of the estate of Julia Daubenspeck was to go to her children."

William Biggs testified : " Am administrator of the estate of Julia Daubenspeck. John Daubenspeck, after the death of Julia, told me that all the estate left by her was to go to her children, but this was before I was appointed as her administrator, and he never directed me how to dispose of her estate, as he did before my appointment."

The foregoing is a substantial statement, and for the most part a literal transcript, of all the evidence in the record, tending to show the terms and consideration of any antenuptial contract between the parties. The bill of exceptions purports to set out all the evidence, and we, therefore, must regard the evidence in the record as all that was in fact given upon the trial. This evidence falls short of showing a contract, by which the parties mutually agreed to waive or renounce any right of inheritance of the one in or to the property of the other. If any valid agreement is shown, it was in reference to the ownership and control of their respective estates during the life of both, rather than after the death of either or both.

It is claimed, however, on behalf of the appellee, that the report of the administrator avers and the proof shows

a gift by John Daubenspeck of his interest in said estate to the children of said Julia.

Upon this point, besides the testimony already recited, the witness Denny testified:

"John Daubenspeck told me, after the death of Julia, he didn't claim a dollar of the money in the bank. * * * * He said he had given his boys all that belongs to them and more than he was leaving these now, and what was there should go to her children. He calculated the property for those three. That he claimed nothing of it, and he wanted them to have it. * * * After the death of Julia, John never exercised any control over it. Susan, Sarah and Joseph (children of Julia) exercised control over it after her death. He told me he didn't claim a dollar in the certificate of money in bank. Susan drew the money out of bank by checks. I don't know whether John Daubenspeck knew it or not, or whether he gave his consent."

While this testimony tends strongly to show a purpose on the part of said John to disclaim and relinquish all right in his deceased wife's estate, in favor of her children or some of them, it fails to show that he accomplished that purpose in any effectual manner. He had parted with no possession, had made no delivery of the property or assignment of his interest therein, to the alleged donees, and had made no declaration or promise which he was not at full liberty, at any time, to revoke. Smith v. Dorsey, 38 Ind. 451, and authorities cited.

The motion for a new trial should have been sustained.

Judgment reversed, with costs, and cause remanded.