(No. 5755.   December 2, 1931.)

In the Matter of the Estate of JOHN EDWARD FLESH-
MAN, Deceased.   JULIA N. FLESHMAN, Appellant,
v. T. J. FLESHMAN, Executor of the Will and Estate
of JOHN EDWARD FLESHMAN, Deceased, Respond-
ent.

[5 Pac. (2d) 727.]

Cox, Martin & Ware, for Appellant.

P. E. Stookey, for Respondent.

GIVENS, J.—John Edward Fleshman died.testate, March 19, 1921. The material portions of his will are as follows:

"Second, that my executor or administrator take charge and keep all of my personal and real estate property together and use the same so as to bring in the best revenue until my youngest child shall become of legal age.

"Third, that the revenue derived from my property be used in careing for my wife Julia N and the children of my second wife Georgie May Fleshman, Mildred Clarice Fleshman, Woodrow Wilson Fleshman, and any children which may be borne hereafter, except there shall be taken from the said revenue enough money to pay the premium on a certain policy held by my wife for four thousand dollars,

"Fourth. At the time of my youngest child becomeing of legal age, I direct that my property both personal and real shall be divided equally between my wife Julia N. Fleshman and all of the children both of my first and second wife whose names are as follows. Children of my wife Charlotte Francis, Agnes Matilda Fleshman, Verna Warren Fleshman, of my wife Julia N. Fleshman, Georgie May Fleshman, Matilda Clarrice Fleshman, Woodrow Wilson Fleshman, share and share alike.

"Fifth, I direct and appoint my brother T. J. Fleshman my administrator, of this my last will and testament and hereby revoke all former wills by me made."

The will was admitted to probate April 16, 1921, and T. J. Fleshman appointed executor.

Thereafter, the executor, without applying to the probate court as provided for in C. S., chap. 281, leased the premises

at various times to various persons, among others, his son, and borrowed money for the estate in various amounts from time to time.

No order for family allowance was made, nor account rendered by the executor until February 13, 1930, when decedent's widow, appellant herein, made application therefor, to the probate court.

During the above period, the executor, without order, had paid various sums to the widow for the support of herself and children and the widow had on her own account made purchases from various merchants. The executor, likewise, without any order from the probate court, paid various amounts less than the total thereof, on these accounts incurred by the widow, some of which had been reduced to notes, signed by appellant and one of her children.

Appellant objected to the settlement of the executor's account in the probate court, and on appeal to the district court, and herein, urging that the executor had no right to lease the property or borrow money without an order of the probate court in accordance with the provisions of the statutes; that the family allowance ordered was insufficient, and should be sufficient to enable appellant to repay the merchants for the purchases made by her prior to, and since, her husband's death; that the executor had no right to lease property to his son.

Appellant voluntarily, and without objection, in effect assumed the burden of proving the incorrectness of the executor's account filed, and may not now complain that the trial court did not properly impose this duty on respondent.

Respondent's contention that the assignments of error are insufficient, is without merit.

No charge was made that the leases or loans were not for the benefit of the estate, or that the heirs of the estate had been in any way injured thereby, and the appellant stated that only the legal aspect of the leases and loans was raised, and no evidence was introduced affording a basis for the infliction upon the executor of any penalty for not complying

with the statutes; hence, the only point involved was the legality of his acts in this regard.

Inasmuch, however, as the court made findings that the executor had the right to lease property and borrow money without compliance with the statutes, it appears necessary to pass upon these points.

The power of an executor to borrow money (24 C. J., p. 69), or lease (24 C. J., pp. 190, 191), or continue his testator's business (24 C. J., pp. 57–59), is derived only from the express terms of the will or the statutes. Such authority if conferred, must be strictly pursued. (24 C: J., pp. 190, 191.)

C. S., sec. 7671, is almost identical with the statute California had on this subject prior to 1927, sec. 1579, C. C. P., and that state has held that the statutes must be complied with. (*In re Broome's Estate*, 162 Cal. 258, 122 Pac. 470; *In re Pforr's Estate*, 144 Cal. 121, 77 Pac. 825.) No case has been called to our attention authorizing a lease or loan by an executor without compliance with the statutes, where the will did not more explicitly than herein, so direct. The word "use" in the will was clearly intended to mean, as suggested by the trial court during the trial of the case, "handle" or "manage"; not in its technical or legal sense, as creating an interest or estate in real property or conferring a power, but rather gave authority to, in effect, continue decedent's business. (Perry on Trusts and Trustees, 7th ed., sec. 298; 39 Cyc. 846; C. S., sec. 7656.) In other words, the executor was to manage the estate for the best interest of the widow and other heirs, but subject to the appropriate statutes. It is unnecessary, and inapplicable, to consider the distinction between an executor and a trustee discussed in *Jones v. Broadbent*, 21 Ida. 555, 123 Pac. 476.

By paragraph 2 of the will, the testator clearly intended that the benefits from the "use" of the property of the estate were to go to his wife and children; thus no estate was created in the executor, and the word "use" was given not a technical meaning, but the common meaning, namely, "to employ for the accomplishment of a purpose; turn to

account'' .(Funk & Wagnalls New Standard Dictionary), and, in effect, the testator wanted the executor to manage the estate for the benefit of his heirs. Concededly, the testator had the right to defer possession of the estate by the heirs, after payment of debts, until the youngest child became of age, and no question is raised that he did not; the direction in the will was no more than a specification as to who should manage the estate, and cannot be construed to mean that in so conducting the affairs of the estate, the executor would not be subject to the statutory direction, supervision, and control of the probate court.

The direction in the will did not create an estate in the executor, but granted authority, though not a ''power'' in the strict sense. (49 C. J., p. 1276.) Evidently, however, the testator desired to have the executor act as such, hence under control of the probate court, and not as legatee or devisee, and consequent trustee, and the language in *Jones v. Broadbent, supra,* is particularly apt:

''The testator may have been willing to give this power of sale to his executors, since he knew that every sale by them must be confirmed by the court before the title to the land would pass from his estate, while he might have been unwilling to vest the same persons with a power whose exercise would be without such supervision and control.''

While, therefore, the language in the will empowered the executor to manage the farm until the youngest child became of age (*Crooke v. Hume's Ex'x,* 139 Ky. 834, 109 S. W. 364; *Palmer v. Moore,* 82 Ga. 177, 14 Am. St. 147, 8 S. E. 180), it does not indicate that the testator intended that the executor should do so otherwise than under the statutory supervision of the probate court; hence, loans or leases could only be made with the approval of the probate court properly obtained.

The lease to the son was illegal because not made in compliance with the statutes. Whether there were reasons justifying the lease, and removing it from the ban of being against public policy, and voidable, the record does not

disclose. (*In re Laberee's Estate,* 126 Or. 301, 269 Pac. 861; *Swinehart v. Turner,* 44 Ida. 461, 259 Pac. 3.)

From the above history of the case, it is apparent that the executor, the widow, and the merchants dealing with the widow since decedent's death, have disregarded the law. The widow has, however, been in a more helpless position than the executor, and it is inconsistent for him to complain of her purchases, without his order or consent, when he has in part paid for these purchases, and has himself never paid any attention to the law, until called to account by the widow.

"Administrators and executors occupy toward an estate which they represent a fiduciary relation of peculiar significance." (*Flynn v. Driscoll,* 38 Ida. 545, 34 A. L. R. 352, 223 Pac. 524.)

"The relation existing between an executor or an administrator and the heirs of a deceased person, especially when such heirs are minors bereft of both father and mother, as in this case, constitutes a trust of the most sacred character, and such officer should be held to the duty of performing his trust with the utmost fidelity. Probate courts, which have jurisdiction of such matters in the first instance and are charged by law with supervision of the settlement of estates of deceased persons, can do much to insure honest and capable handling of such estates if they insist as they should in every case, that such officers shall be held to the strictest compliance with the laws governing their official transactions." (*Schneeberger v. Frazer,* 36 Ida. 737, 213 Pac. 568.)

While appellant in her petition asked that the indebtedness to various merchants incurred by her "be adjudged a valid and prior lien against said estate, or that your petitioner be allowed a family allowance of Forty Dollars ($40.00) per month from the date of decedent's death to the date hereof, to enable your petitioner to pay said indebtedness"; and for $100 a month from January 1, 1930, appellant herein does not urge that the indebtedness to these merchants should be allowed directly as claims, as such, against the estate, but that the family allowance should be granted retroactively in

sufficient amount to reimburse the widow for what she has necessarily expended, in addition to the amounts received from the executor, for the support, etc., of herself and children. No claims have been filed by or in behalf of the widow's creditors and they are not parties to this action; hence, their rights, if any, as to the estate herein involved are not before us for consideration.

C. S., secs. 7565–7568, give the probate court authority to order a so-called family allowance during administration. The vital question herein is how much. The amount earned by the estate or procured from.the estate by the management is, and has been, insufficient to pay the expenses incurred by executor, allowed by the probate court, and not, except as to interest on loans made by the executor disputed or questioned by appellant, and supply appellant and her family with what she has deemed necessary for their support, etc., inclusive of what they have received from the executor, and indebtedness incurred.

The right of testamentary disposition, and the rights of beneficiaries to take under a will, are alike statutory, and are subject to the power of the probate court having jurisdiction, to make provision for the support of the widow or minor children out of the estate. (*In re Whitney's Estate,* 171 Cal. 750, 154 Pac. 855; *In re Kennedy's Estate,* 157 Cal. 517, 108 Pac. 280, 29 L. R. A., N. S., 428; *In re Bump's Estate,* 152 Cal. 271, 92 Pac. 643.) A family allowance is, in this respect, analogous to a probate homestead, which may be ordered even out of property specifically devised. (*In re Whitney's Estate, supra.*)

All of the property of a decedent, whether income or *corpus* of the estate, is liable for the payment of family allowance. (*Buck v. McLaughlin,* 48 Fed. (2d) 135.)

In view of the above authorities, and since it is apparent that the income from the property was insufficient, the court had the power and duty to award as family allowance, an amount sufficient for the support of the widow and family, even if such amount had to be taken in part from the *corpus* of the estate.

It appears from the record that $55 a month was and is, insufficient to support the widow and family, and in view of the circumstances herein disclosed, the allowance should be more than $55 per month.

As to the purchases by appellant since her husband's death, if the court finds they were necessary, then their amount should be taken into consideration in fixing the amount of the allowance.

Judgment reversed, and cause remanded for further proceedings in accordance herewith. Each party to pay his or her own costs.

Lee, C. J., and Budge, Varian and McNaughton, JJ., concur.