205 P.2d 495

**BLAKE v. BLAKE et al.**

No. 7382.

Supreme Court of Idaho.

April 22, 1949.

J. H. Felton and William J. Jones, both of Lewiston, for appellant.

E. H. Casterlin, of Pocatello, and Ray E. Durham, of Lewiston, for respondent.

GIVENS, Justice.

James W. Blake died testate August 14, 1931, possessed of separate and community real and personal property, survived by his widow and two adult sons, Bruce and Peter, and two minor sons, John and George, twins, who reached their majority April 17, 1937.

He bequeathed $2,000 to Peter and one-half of the residue of his entire estate to his widow, and one-sixth share and share alike to Bruce, John and George; the

shares of John and George to be held in trust until they attained the age of 22 years; the income from said trust fund to be used for their support, maintenance and education; nominated his widow and Bruce as executrix and executor and joint trustees with provision for substitution, to serve without bond.

The estate was probated by the executrix and executor in the Probate Court of Clearwater County, decedent's residence and situs of most of the property, and in the Superior Court of Lincoln County, Washington, where additional real and personal property was located.

Peter's legacy was paid to him and his interest and connection with the estate are no longer involved.

July 31, 1933, the Washington Court entered decree of settlement of final account and distribution, distributing the estate property there in accordance with the will, and that the distributive shares of John and George should be held in trust by Mrs. Blake and Bruce as trustees until John and George should arrive at the age of 22 years, and appointed Mrs. Blake and Bruce trustees for the distributive shares of the said minors without bond. The said executors were further ordered and directed to deliver to the distributees their portions of said estate, make return of their proceedings therein to the Court, showing receipts by such distributees of their portions of the estate. No further

proceedings in that Court appear in the record.

June 24, 1938, the Probate Court in Clearwater County entered a decree of settlement of final account and distribution, ordering distribution of the property in exact accordance with the will and— " * * * that upon the filing of receipts showing the payment to the persons entitled thereto, as provided in the said Will, and as above set forth, the said Executrix and the said Executor be discharged from all further liability on account of said trust, and that the said estate be finally closed."

A supplemental decree of distribution to correct a defective description of one piece of real property was filed December 19, 1938, and no further or final order under Section 15-1331, I.C.A., has been filed. McAdoo v. Sayre, 145 Cal. 344, 78 P. 874.

Since there was no showing that the Washington law is different from ours, we must assume that the force and effect of the decree there was the same as the decree in Idaho, under Sections 15-1306 and 15-1307, I.C.A., i. e., not having been appealed from, was final and conclusive as to the respective shares in the estate to which each of the heirs was, under the will, therein determined to be entitled. Coats v. Harris, 9 Idaho 458, at page 468, 75 P. 243.

However, both by statute, Section 15-1307, I.C.A., and decision, such decree is final only as to the determination of each

heir's share under the will, not as to any contracts or agreements between the heirs inter sese or with third persons as to the disposition by the heirs of their respective shares. Coats v. Harris, supra; Miller v. Mitcham, 21 Idaho 741, at page 745, 123 P. 141; Estate of Blackinton, 29 Idaho 310, 158 P. 492; Larsen v. Larsen, 44 Idaho 211, at page 216, 256 P. 369; Moyes v. Moyes, 60 Idaho 601, at page 608, 94 P.2d 782.

Beginning with 1941 and culminating in 1944, disputes and differences arose between George, his mother and brothers, Bruce and John, and June 27, 1946, appellant filed a complaint in the District Court of Clearwater County against his mother and brother, Bruce, alleging in substance the history of various transactions involved herein and that the receipt and two deeds hereafter noted, and purportedly signed by him, were in fact forgeries; that he had never signed them and had never received his claimed one-sixth share of the estate, real or personal; the value of certain properties of the estate and transfers made in derogation and disregard of his rights and without his consent; that there was omitted from the inventory and appraisal of the estate property, certain real property described in Exhibit 3 attached to the amended complaint, which although standing in the name of Jessie M. Blake in 1931, was community property; the acquisition, control and expenditure of various sums of money by respondents; their collection and mismanagement of revenues from the estate, etc.; and that

demand had been made upon the testamentary trustees for an accounting and surrender of appellant's share of the estate and income therefrom; their refusal to comply; lack of his discovery that respondent, Jessie M. Blake, claimed the property and incomes therefrom adversely to appellant and to the trust, prior to the 22d day of January 1945; and prayed for an accounting, impressment of the trust; that the court decree his interest in the estate and require respondents to pay over and surrender to him such decreed share.

Attached to the complaint were numerous exhibits setting forth the various steps and orders in the probate of the estate, inventories, accounts, etc.

The answer in substance denied the property in Mrs. Blake's name was community property and denied any wrongdoing or mismanagement of their trust by the executrix and executor and testamentary trustees and that a family agreement had been agreed upon thus:

"That thereafter (testator's death) and prior to June 2, 1938, James Bruce Blake, John K. Blake and George B. Blake agreed with each other as follows:—

"That Jessie M. Blake, their mother, should have their mutual aid, assistance and protection during the remainder of her life;

"That Jessie M. Blake and James Bruce Blake should not close and cause the estate of James W. Blake, in Idaho, to be closed until after April 7, 1938;

"That Jessie M. Blake should have for her own use and benefit all of the cash remaining in the estate, certain of the real estate in which they were interested, and the income from all of the estate wheresoever situated, during her lifetime.

"That they would do everything necessary in and about the premises to accomplish the purpose thereof and that in the future they would depend upon the bounty of their mother for such portion of the property as she might give them, either during her life time or upon her death."

and that each one of the brothers entered into releases and relinquishments to their mother of their shares, in reliance upon the others so doing; in other words a mutual and interdependent consideration flowing among the three. To accomplish the purpose of such agreement, a receipt and two deeds were executed, and—"That during all of said time Jessie M. Blake and James Bruce Blake have relied upon the said agreement, having reliance upon the truth and veracity of the agreements and representations of the said George B. Blake that his mother was and is to have all of the real estate conveyed to her and all of the cash income from the property of the estate so long as she shall live, depending upon the bounty of the mother to preserve the said estate and give them what is left upon her death, in the meantime to have and to hold the same irrevocably", and that appellant is now estopped by the passage of time and acquiescence in respondents' acts to claim contrary to said agreement, and additional allegations with regard to the interest and disinterest of appellant in various pieces of property, the details whereof are not material in the overall solution of this action, and asserted that the cause was barred by Section 5-204, I.C.A.—unjustified as will appear from the opinion hereafter.

The widow, Bruce, and John testified that immediately after Mr. Blake's demise, a mutual agreement was entered into by the widow, Bruce, John and George to the effect that the three boys would transfer all of their interests to their mother and that she would have the corpus and income of the entire estate.

August 10, 1936, the executrix and executor gave a deed to one James McCullough for a large amount of real property of the estate. August 12 of the same year, McCullough and his wife reconveyed the property to Mrs. Jessie M. Blake. This transaction was claimed to have been made in furtherance of the asserted family agreement, but it was in violation of Section 15-745, I.C.A., and is of no force or effect.

Conceding that under Section 31-103, I.C.A., a minor may make a contract, which unless disaffirmed as therein provided is valid, a contract must have been made. Appellant cannot be charged with the necessity of disaffirming something which did not exist, or of failing to dis-

affirm when there never was a valid contract to disaffirm.

Respondents were fiduciaries as executrix and executor and testamentary trustees, In re Estate of Fleshman, 51 Idaho 312, 5 P.2d 727; State Insurance Fund v. Hunt, 52 Idaho 639, 17 P.2d 354, and have not yet been discharged; therefore, the burden of proof was on respondents to prove a gift or transfer of appellant's one-sixth share in the estate to Mrs. Jessie M. Blake by clear, satisfactory, convincing and unequivocal evidence. In re Estate of Randall, 64 Idaho 629, at page 640, 132 P.2d 763, 135 P.2d 299. Such evidence must, perforce be substantial and of such a kind, character and quality and quantum as to justify the trial court's finding and conclusion there was a gift, transfer or agreement. Hagan v. Clyde, 60 Idaho 785, at page 789, 97 P.2d 400; Gray v. Fraser, 63 Idaho 552, 123 P.2d 711.

In Reardon v. Whalen, 1940, 306 Mass. 579, 29 N.E.2d 23, 24, upon facts substantially the same as here, the Court considered the precise point as to what evidence is essential to prove a gift or transfer of the kind asserted to have been made herein by appellant to his mother, and said: "A share as next of kin in an undistributed estate is property. It is capable of being conveyed by a proper instrument of conveyance. Security Bank of New York v. Callahan, 220 Mass. 84, 87, 107 N.E. 385; Harrison v. Stevens, 305 Mass. 532, 26 N.E.2d 351. It does not,

however, carry with it actual title either in whole or in part to any particular asset of the estate. Title to all the personal assets vests in the administrator upon his appointment and relates back to the death of the former owner. Lawrence v. Wright, 23 Pick. 128; Rolfe v. Atkinson, 259 Mass. 76, 77, 156 N.E. 51; Stuck v. Schumm, 290 Mass. 159, 163, 194 N.E. 895. The interest of the next of kin in his undistributed share is of the general nature of a chose in action. In Millett v. Temple, 280 Mass. 543, at page 550, 182 N.E. 921, at page 922 [84 A.L.R. 378], it was said, with the citation of many cases, that a chose in action, including a simple debt, having 'no corporeal existence' and no 'tangible body,' could not be given away effectively 'without a deed, the execution of an adequate release or transfer in writing, or the performance of some other act placing the debt beyond the legal control of the creditor,' and that 'This principle has its roots deep in the common law and comes from early times.' That case is, we think, decisive of this one. Other elements which there affected the ultimate decision in favor of a gift are absent here. Such cases as have been found in other jurisdictions involving the gift of a distributive share or of a legacy are in general accord with the theory of the Millett case. Rowland v. Phillips, Ark., 1890, 13 S.W. 1101; Daubenspeck v. Biggs, 71 Ind. 255; Bullock v. Tinnen, 4 N.C. 251, 6 Am. Dec. 562; Cotteen v. Missing, 1 Madd. 176, 183, 184; Hooper v. Goodwin, 1 Swanst. 485,

490, 491. See cases collected in 48 A.L.R. 223. In Esswein v. Seigling, 2 Hill Eq., S.C., 600, the executor had taken actual possession individually and severally of the money donated."

 Reardon v. Whalen was based on Millett v. Temple, supra, 1932, 280 Mass. 543, 182 N.E. 921, 84 A.L.R. 378, annotations 383, which cited numerous authorities in support of the proposition that words are not enough to prove a gift of this kind and that where property is capable of transfer by written instrument, there must be such. That case has been followed with approval in Michael v. Holland, 111 Ind.App. 34, 40 N.E.2d 362, at page 365: " 'Words alone are not sufficient to constitute a gift inter vivos, but there must be a delivery by the donor and an acceptance by the donee.' "

See also Benoit v. Benoit, 317 Mass. 181, 57 N.E.2d 546, at page 547.

Reardon v. Whalen, supra, has been followed in Keegan v. Norton, 1947, 322 Mass. 158, 76 N.E.2d 1, 2: " * * * The evidence goes no farther than to show an executory promise by the testatrix to transfer the stock to her, and if this evidence was believed it would not establish a gift. There was no delivery either actual or constructive of the stock certificate or any instrument showing the transfer of these shares. * * *"

The above rule is not only sound and wholesome generally, but is particularly appropriate herein where the avowed purpose of the putative agreement was to immediately set aside and repudiate the solemn testamentary disposition of the property and to end a testamentary trust before it even started and when the beneficiaries were under age with no guardian of their estate.

No written evidence of any attempted or purported agreement or transfer was introduced, except the receipts and the two deeds.

The only oral evidence with regard to the claimed agreement or the performance of any act placing appellant's share irrevocably beyond control, must, if it exists, be found in the testimony of Mrs. Jessie M. Blake, John and Bruce, and the attorney for the estate.

Individual receipts, identical in form and all acknowledged before Leo McCarty, Notary Public, and attorney for the estate, were filed in the Clearwater County Probate Court by the widow and the three sons herein, thus:

"In the Probate Court of Clearwater County, State of Idaho.

"In the Matter of the Estate of James W. Blake, Deceased. } Receipt.

"I, the undersigned, one of the heirs and devisees of the said James W. Blake, deceased, hereby acknowledge to have received from the Executrix and the Executor of the above entitled estate, all of my distributive share of said estate, and here-

by release them from any further liability to me.

"Dated at Orofino, Idaho, this 24th day of June, 1938.

"s/George B. Blake
"One of the heirs and devisees of the said James W. Blake, deceased."

Also, a quitclaim deed executed August 5, acknowledged August 8, 1938, and filed in the Recorder's Office of Clearwater County, August 13, 1938, conveying certain described real property from Bruce, George and John, to the widow. A corrective deed covering some of this property was executed May 27, 1939, and filed June 29, 1939. Appellant admits signing this latter deed, but claimed he thought without reading it, that it was corrective only and not re-affirming provisions of the quitclaim devolution. Appellant denied he signed the receipt and the first deed and claimed his signatures thereon were forgeries, and denied the conversations as to any agreement.

No affirmative acts of appellant were shown. Non-action by him as to claiming his inheritance prior to 1941 may be said to have been shown, but that does not prove an agreement or lack of disaffirmance thereof. The evidence of the agreement as brought into existence by the conversations is indefinite, vague, negative pregnant statements and too inconclusive to sustain a finding that such an agreement, absent any written evidence of a present or irrevocable transfer, existed. The property of the estate, upon the testator's death, immediately passed to the possession of the executrix and executor, Section 15-410, I.C.A., for administration.

At the time the receipt was given or subsequent thereto, there was no actual or symbolic delivery by appellant to his mother of anything in the way of property or indicia of ownership. Her possession of the property extended at all times until he was 22 years of age by reason of her fiduciary position. Her statement that after the claimed agreement was made she handled the property as her own, disclosed no change of possession or action participated in as such by appellant. Since the trust provided he would receive nothing of the corpus until he was 22, he was not required to perform any act to protect his interest or ultimately receive it. Aside from a demand to share in the proceeds of the sale noted below and the receipts and the deeds, he was merely passive. He may have acquiesced in conversations, but he performed no acts; certainly none of an unequivocal or conclusive nature irrevocably transferring his inheritance, protected as it was by the trust, to his mother, is disclosed by the evidence.

In 1941 when John was going to join the Navy and certain property was sold for some $6,000, appellant requested his share and it was given to him; thus, when he asserted his rights there was acquiescence in his demands, even though as stated by respondents, it was to satisfy him. But,

as an affirmative act on his part, it was an assertion of his right of some share in the estate, clearly contrary to any recognition that by a previous and continuously adhered to agreement he had given his patrimony to his mother.

It is admitted that no one except Mrs. Blake received anything from or by reason of or in connection with the receipts. There was thus no delivery of anything to appellant by reason of the receipt; therefore, it was not evidence of any gift because nothing actually was transferred in connection therewith to him and as to giving any interest to his mother, respondents state in their supplemental brief: "No attorney would advise a client that 'if he signed any instrument' (referring to the receipt) he (appellant) would 'waive his entire right' to his inheritance. No attorney could read the receipt and then advise a client that the receipt would waive the inheritance. The receipt does not 'waive,' it acknowledges receipt of the inheritance." While the receipt might acknowledge the receipt of the inheritance, it is undenied that he actually received nothing. Conceding the receipt on its face showed appellant had acknowledged receipt of his share, it is not written evidence he gave it to his mother. The essential donative evidence is thus not supplied by this document. Therefore, the receipt according to respondents' own construction thereof, was and is a complete nullity. True, Mrs. Blake and her other sons testified she handled all the property as though it were her own, but appellant had not acquiesced in this by any written transfer.

The court found, on conflicting but substantial evidence, that the two deeds of August 13, 1938, and May 27, 1939, were not forgeries and were given to carry into effect the claimed agreement. The evidence, while conflicting with regard to the conversations between the respective parties attendant upon the giving of these two deeds, nevertheless substantially supports that part of the court's conclusions to the effect they were given and intended to give the interest of the three sons of all the property therein conveyed, to their mother. No one testified they saw George sign the first quitclaim deed and he denied he had, and while the Notary who purportedly took his acknowledgment testified from a possible mere cursory inspection of the original of this deed, which was thereafter lost, or a photostatic copy, the signatures thereon might have been forged, his testimony is so fragmentary, evasive, uncertain and abstemious that the trial court was justified in considering the verity of his acknowledgment had not been impeached. First Nat. Bank of Hailey v. Glenn, 10 Idaho 224, 77 P. 623, 109 Am.St.Rep. 204; Bruce v. Frame, 39 Idaho 29, 225 P. 1024.

In any event, the deed, forgery or valid, was filed August 14, 1938, and although he testified he did not know it had been made of record, no adverse comment

or denial was made in connection therewith by appellant until 1941. Furthermore, the second deed referred to the book and page wherein the first one was recorded; consequently, appellant is charged with notice of the contents of this instrument, which he admittedly signed and from which he would have known there was a deed given the year before transferring certain property outright to his mother. The court, therefore, was justified in holding these two deeds valid as transfers of the property therein described by appellant of his one-sixth interest therein to his mother.

■ Respondents contend that at the first family meeting and since at the various family conferences, it was understood and agreed that real property standing in Mrs. Blake's name in 1931 was her sole and separate property and the court so found. There is no evidence, however, as to how or when this property was acquired by Mrs. Blake and the record is too deficient to sustain the court's finding in this particular. This phase of the controversy is, therefore, remanded to the trial court to hear further evidence, if either party so desires, to determine definitely and accurately the status of this property. If it were the sole and separate property of Mrs. Blake, it should not be included; but if it be community property, it should be included in the accounting. Aker v. Aker, 52 Idaho 713, at page 718, 20 P.2d 796, and cases cited; Section 31-907, I.C.A.; Chapter 23, 1943 Session Laws, p. 51.

■ The trial court excluded from the ordered accounting the real property of the trust estate located in the State of Washington, except the rents, issues and profits therefrom brought into the State of Idaho. The action herein was against the trustees requiring personal action on their part; consequently, the trial court had jurisdiction over them in connection with their trust duties covering all property in their hands as trustees. Section 15-1136, I.C.A.; Probate Law & Practice by Ross, Vol. 1, p. 443, Sec. 307A; Squier v. Houghton, 131 Misc. 129, 226 N.Y.S. 162, 163, at page 168, followed and affirmed in Memphis Sav. Bank v. Houchens, 8 Cir., 115 F. 96, at page 109; LeBreton v. Superior Court, etc., 66 Cal. 27, 4 P. 777, followed and approved in State ex rel. Campbell v. Superior Court of King County et al., 7 Wash. 306, 34 P. 1103; State ex rel. Scougale et ux. v. Superior Court of Pierce County, 55 Wash. 328, 104 P. 607, at page 608, 133 Am.St.Rep. 1030; Weygandt v. Larson, 130 Cal.App. 304, 19 P.2d 852; Mills v. District Court of Lincoln County et al., 187 Okl. 247, 102 P.2d 589; Manley et al. v. Carter, 7 Kan.App. 86, 52 P. 915, followed with approval in Meador v. Manlove, 97 Kan. 706, 156 P. 731 at 732; Smith v. Nyburg et al., 136 Kan. 572, 16 P.2d 493, at page 495–497; Allen v. Arkenburgh, 57 N.J.Eq. 440, 41 A. 677 (2d case); 54 Am.Jur. 440, Sec. 564; 65 C.J. 895, #790.

We have noted appellant's assignments of error with regard to claimed specific

instances of error in the course and conduct of the proceedings and trial, but if erroneous, were not so prejudicial as to require further consideration or compel other action herein, so they are without merit.

The decree is, therefore, modified to permit the parties to present further evidence with regard to the property claimed to have been the sole and separate property of Mrs. Blake, and if it be determined that it is not her sole and separate property, the accounting should include such property; and all property of the estate, both real and personal in Washington and Idaho, not covered by the two deeds of 1938 and 1939. Upon such proper accounting, the trial court to make appropriate orders of distribution. Costs awarded to appellant.

PORTER, J., and FEATHERSTONE, TAYLOR, and SUTPHEN, District Judges, concur.