888 P.2d 967

**Fay Luan INGALLS (Bonnell), Petitioner–Appellant,**

v.

**David Lee INGALLS, Respondent–Appellee.**

**No. 15276.**

Court of Appeals of New Mexico.

Nov. 14, 1994.

Monica D. Munoz, Albuquerque, for petitioner-appellant.

K. Douglas Perrin, Brown McCarroll & Oaks Hartline, Dallas, TX, for respondent-appellee.

## OPINION

APODACA, Judge.

Petitioner Fay Luan Bonnell (Wife), formerly known as Fay Luan Ingalls, appeals from the trial court's decision crediting Respondent David Lee Ingalls (Husband) with child support "prepayments" and determining that Husband should not be held in contempt for failure to pay child support. Three issues are raised on appeal; whether: (1) the trial court erred in granting Husband a credit for alleged "prepayments" of child support during the years 1988–90, thus offsetting Husband's underpayments during 1991–93; (2) substantial evidence supported the trial court's conclusion that Husband had paid $68,303 to Wife for child support since the parties' divorce in 1988; and (3) the trial court abused its discretion in not holding Husband in contempt for underpaying child support in 1991–93.

We conclude that the trial court erred in crediting Husband with child support "prepayments." We hold that parties may not, by private agreement, modify future child support obligations; rather, modification of future child support is a matter to be determined by the courts. *See* NMSA 1978, § 40-4-11.4 (Repl.Pamp.1994). Because we hold that Husband is not entitled to a credit for prepayment of his child support obligation, we need not reach the issue of whether substantial evidence supported the trial court's conclusion that Husband had paid $68,303 in child support. Additionally, we hold that the trial court did not abuse its discretion in concluding that Husband should not be held in contempt. Therefore, we reverse and remand with directions that the child support arrearages be paid in full, in a manner to be determined by the trial court.

## I. BACKGROUND

Husband and Wife divorced in 1988. The Child Custody and Property Settlement Agreement provided that Husband would make child support payments of $1,000 per month beginning on July 1, 1988, for the support of the parties' two minor daughters. This support obligation could be adjusted under certain conditions, including certification by the parties of the amount of their respective gross incomes for the previous year and determining the child support obligation for the next year based on those incomes. Each party waived the right to receive alimony from the other. The agreement also stated:

12. *Complete Agreement:* This is the complete agreement of the parties, and there are no other agreements between them, in writing or orally. Any amendments or modifications to this Agreement must be in writing and shall not be enforceable nor effective between the parties unless stated in writing.

The divorce decree ratified and fully incorporated the terms of the settlement agreement. The evidence was undisputed that the terms

of the settlement agreement had never been modified in writing.

In May 1993, Wife filed a motion for an order to show cause, alleging that Husband was delinquent in his child support payments in the amount of $18,950. At the show cause hearing held in August 1993, Wife alleged that, as of the date of the hearing, Husband should have paid $62,000 in child support, but had paid only $38,900, and was therefore in arrears $23,100.

Husband contended that in 1988, Wife approached him for financial assistance so that she could obtain a college degree. He allegedly agreed to provide this assistance in the form of extra child support payments, which he testified were made between 1988–90. He testified that he told Wife the excess payments constituted prepayment of child support. Specifically, he stated that he owed $6,000 in child support in 1988, but paid $6,850; owed $12,000 in 1989, but paid $22,091; and owed $12,000 in 1990, but paid $24,000. Additionally, Husband claimed credit of $2,434 for payments that he made in 1991 on a car that he gave to Wife. He further contended that he should receive credit for the value of the car in the amount of $5,000 to $6,000.

Wife testified that, based on her records, she received child support of $3,000 in 1988; $11,000 in 1989; $14,000 in 1990; $4,900 in 1991; $3,900 in 1992; and $2,500 in 1993. She acknowledged that she had received more child support than was due in 1990, but denied ever asking Husband for additional sums. She also denied discussing with Husband why he was making the extra payments or being told that such payments were prepayment of child support.

The trial court found that, through August 1993, Husband had paid Wife $68,303 in child support, including $2,434 in payments on the automobile Husband gave to Wife. It also found that Wife had difficulty accounting for her income and expenses from the time of the divorce through the present and her mother had therefore taken over maintaining a journal for her. The court stated that Wife's records regarding her receipts and expenses were unreliable. Based on these findings, the trial court concluded that the petition to show cause should be denied, that Husband was entitled to a credit of $68,303, and that there was no evidence that allowing Husband credit for prepayments of his child support would affect the children's welfare. Wife appeals.

## II. DISCUSSION

### A. Credit for "Prepayments" of Child Support

Wife argues that the trial court abused its discretion by allowing Husband a credit for child support paid in a manner other than previously ordered by the court. She acknowledges that equitable principles apply in the context of a contempt proceeding and any valid defense against payment may be raised, *Mask v. Mask*, 95 N.M. 229, 231, 620 P.2d 883, 885 (1980), and that credit against arrearages may be allowed for payments other than ordered under certain circumstances, *Hopkins v. Hopkins*, 109 N.M. 233, 237, 784 P.2d 420, 424 (Ct.App.1989). Nonetheless, she contends that the defense of "prepayment" of child support should not have been allowed because such a defense is contrary to public policy.

Although both parties cite *Romero v. Romero*, 101 N.M. 345, 682 P.2d 201 (Ct.App. 1984), and *Mask*, 95 N.M. at 231–32, 620 P.2d at 885–86, as supporting their respective positions, neither case addresses the particular issue raised in this appeal. *Mask* held that, when a parent who is ordered to make child support payments becomes totally and permanently disabled and the other parent, as a result of the disability, then receives unconditional social security payments for the benefit of the minor children, the disabled parent is entitled to credit for each disability payment up to the extent of the monthly support obligation. *Romero* extended *Mask* by permitting an obligor spouse, whose children received a lump sum social security disability payment covering the period from the date of disability to the date of payment, to receive credit toward the support obligation for all of the period covered by the lump-sum payment. Both *Romero* and *Mask* involved credit against child support arrearages for payments made on behalf of the obligor par-

ent from a third party, rather than payments made directly by the obligor parent. Additionally, neither case involved an alleged agreement between the parties to modify the child support obligation.

■ As Wife points out, obligor parents have generally not been allowed credits for voluntary expenditures where the court order was not altered. *See Britton v. Britton,* 100 N.M. 424, 429–30, 671 P.2d 1135, 1140–41 (1983) (in absence of petition to modify child support obligation, father not entitled to offset against arrearages for expenditures voluntarily undertaken when one child began living with him); *Hopkins,* 109 N.M. at 237, 784 P.2d at 424 (stating the general rule is that "a non-custodial parent will not be permitted credit against court-ordered child support obligations for gifts given to the children"). Many courts have denied such credit on the basis that granting credit against arrearages for such voluntary overpayments permits the obligor parent, at his or her will, to vary the amount of the payments, and thus the terms of the court order, possibly to the detriment of the child. *See generally* Robert A. Brazener, Annotation, *Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for Other Voluntary Expenditures,* 47 A.L.R.3d 1031, 1055–57, § 15 (1973). Wife would have this Court construe Husband's overpayments in this case as voluntary gifts that do not relieve him of the continuing, court-ordered obligation to pay monthly installments of child support. Although it would be unreasonable and arbitrary to characterize such overpayments necessarily as gifts, we do agree that the overpayments cannot reduce Husband's court-ordered obligation.

In *Williams v. Williams,* 109 N.M. 92, 99, 781 P.2d 1170, 1177 (Ct.App.), *cert. denied,* 109 N.M. 54, 781 P.2d 782 (1989), this Court distinguished between private agreements to waive child support arrearages already accrued and agreements to waive future support payments. There, we held that parties can agree to waive child support arrearages already accrued. *Id.* We held, "[h]owever, [that] parties cannot agree to waive future child support obligations because this is a matter to be determined by the courts." *Id.*

This declaration is consistent with the general rule that a court cannot retroactively modify a support obligation. *See id.* at 97, 781 P.2d at 1175.

The *Williams* rationale applies equally to the cash-in-hand prepayments of child support present in this case. The prepayment of child support is arguably more beneficial to the custodial spouse and the child, and may result only in a minor adjustment in the timing of the support payment, as opposed to an actual loss of support, which often happens with waivers. Nonetheless, we value consistency and predictability in this area of the law, an area where our courts have repeatedly adhered to the general rule disapproving retroactive modification of child support. Additionally, "[t]he child's present and future welfare takes precedence over the rights of the court-designated payor and payee of child support payments. Thus, not-yet-due court-ordered child support payments are always subject to the further order of the court." *Lindsey v. Lindsey,* 6 Haw.App. 201, 716 P.2d 496, 500 (1986). Therefore, following *Williams,* we hold that, even for cash prepayments of child support, parties cannot by their own private action bind the hand of the court that established the order of child support in the first instance. The proper and preferable procedure in this case, for example, would have been for Husband to seek immediate judicial ratification of his prepayment plan and wait for judicial modification of his future child support obligations. Had Husband done so, the trial court could have inquired under fresh, contemporaneous facts, the implications for the ongoing needs of the child. For example, the trial court could have inquired into whether the reduction should be given effect all at once or spread out over time in the form of partial reductions of future monthly payments to ease the burden of declining payments to Wife.

■ This is not to say, however, that Husband must lose credit for his prepayments. Husband can file a petition to modify his *future* child support obligations. *See* § 40–4–11.4. In such a case, we believe that an agreement between the parties, express or implied, to the effect that Husband would

"prepay" child support in exchange for a reduction in such payments in the future, coupled with actual payment in this manner, should receive serious consideration by the trial court in weighing prospective modification. Indeed, it strikes us as plausible that at least one reason for the prepayments in this instance may have been to enable Wife to become more of a wage earner by finishing her education, and that fact, coupled with Husband's purported deterioration in financial status, would certainly justify a fresh look at prospective child support. As always, the child support guidelines set out in NMSA 1978, Section 40–4–11.1 (Repl.Pamp.1994) are presumptively correct, and the trial court should give primary considerations to the ongoing needs of the children, keeping in mind that it is the Husband's burden to persuade the court that prepayment and modification would have no deleterious impact on the ongoing needs of the child. *See Spingola v. Spingola,* 91 N.M. 737, 742, 743–44, 580 P.2d 958, 963, 964–65 (1978). We leave to the trial court the manner in which such consideration may be implemented. In this case, to the extent that Husband reduced the child support payments without approval of the trial court and gained judicial approval only retroactively, we reverse and remand with instructions that arrearages must first be paid in full in a manner to be determined by the trial court. We leave it to the trial court to determine in what months Husband failed to pay his $1,000 support obligation. The court can then add up the total amount of the shortfall to determine the arrearages that Husband must pay.

B. Refusal to Find Husband in Contempt

 A trial court has wide discretion in determining whether to hold a person in contempt. *Corliss v. Corliss,* 89 N.M. 235, 239, 549 P.2d 1070, 1074 (1976). In a proceeding to enforce a child support order, the trial court also has latitude to consider any equitable defense. *Hopkins,* 109 N.M. at 237, 784 P.2d at 424. In light of the fact that the trial court could have found, based on the evidence before it, that Husband acted in good faith in prepaying child support obligations, we conclude that the trial court did not abuse its discretion in refusing to find Husband in contempt.

III. CONCLUSION

We conclude that the trial court erred in granting Husband a credit for "prepaid" child support. Therefore, to the extent Husband reduced his child support payments without approval of the trial court, we reverse and remand with directions that arrearages be paid in full in a manner to be determined by the trial court. We further conclude that the trial court did not abuse its discretion in refusing to hold Husband in contempt.

**IT IS SO ORDERED.**

HARTZ and BOSSON, JJ., concur.