This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MARY ANN ORTIZ,**

Petitioner-Appellee,

v.                                                                              **NO. 28,392**

**DONALD J. ORTIZ,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Sutin, Thayer & Browne
Kerry Kiernan
Twila B. Larkin
Albuquerque, NM

for Appellee

Narvaez Law Firm, P.A.
Martin R. Esquivel
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Donald Ortiz (Husband) appeals a district court order establishing the amount of child support he must pay to Mary Ann Ortiz (Wife).  In setting the amount of support, the court first considered both parties' gross income in accordance with state guidelines and concluded that Wife owed Husband $7,400. *See* NMSA 1978, § 40-4-11.1 (1995).  In reaching this figure, it considered several gifts received by Husband against his gross income; then, offsetting the amount owed by Wife to Husband, the court found that Husband owed Wife $70,000 pursuant to a prenuptial agreement which required him to pay a predetermined amount of child support in the event of dissolution.  Husband argues that the enforcement of a prenuptial child support term of this type violates public policy by allowing parties to circumvent the district court's authority.  He also contends that the court improperly considered the gifts he received against his gross income.

We affirm in part and reverse in part the order of the district court, holding that (1) the court was within its discretion to deviate from Section 40-4-11.1 based on the prenuptial agreement because it did so in writing and in conjunction with a calculation of the parties' gross income under Section 40-4-11.1; and (2) the court improperly included irregular gifts in calculating Husband's income.  We remand to the district court for a recalculation of child support consistent with this opinion.

**BACKGROUND**

The parties were unmarried and living together when Child was born on November 17, 1988. Almost three years later, on May 14, 1991, they executed a prenuptial agreement and were married. In pertinent part, that agreement provides

> The parties further agree that in the event of the dissolution of the parties' marriage in the future for any cause, or their separation, [Husband] agrees to pay child support in the amount of Five Hundred Dollars ($500) a month for the parties' minor child . . . until age 21, or such higher amount as a court of competent jurisdiction may order.

Wife's uncontroverted testimony indicates that she agreed to this term in consideration for waiving any claim upon various other property in the event of dissolution or separation.

On March 19, 1998, Wife filed a petition for dissolution of marriage. In it, she asked the court to determine child support "pursuant to the New Mexico Child Support Guidelines" and made no mention of the prenuptial agreement. Husband filed a response on April 22, 1998, and likewise asked the court to establish child support in accordance with the guidelines. His response discussed the prenuptial agreement in some detail, and despite his request that the court refuse to enforce the child support term as violative of New Mexico public policy, he argued the continuing validity of the terms relating to Wife's waiver of claims to various real and personal property. On December 23, 1999, the court issued an order dissolving the marriage and reserving jurisdiction to set child support. Child was eleven years old at the time.

For the next several years, Husband and Wife shared custody of Child in various amounts and provided for Child according to an informal arrangement. After August 2003, Child began spending most of his time with Husband, and on May 23, 2006, Husband filed a motion to establish child support. Husband argued that he had served as Child's primary care-giver since the parties' divorce. Wife had not been adequately providing for Child, he contended, and he asked the court to calculate child support according to state guidelines beginning at the time of the parties' separation and ending at Child's eighteenth birthday. In Wife's response, she agreed that support should be established in accordance with the guidelines but disagreed with the basis upon which it should be calculated. She argued that instead of beginning at the time of separation, support should be calculated from the time of dissolution, and as an "affirmative defense," Wife asked the court to enforce the child support term in the prenuptial agreement.

On September 19, 2007, and October 18, 2007, the district court held a trial on the merits to adjudicate the proper amount of child and spousal support. It later issued written findings of fact and conclusions of law, in which it calculated the gross income of both parties in accordance with Section 40-4-11.1. Concluding that deviation from a strict application of the guidelines was appropriate, the court factored-in four gifts to Husband from his mother's estate as income imputed to him: $20,000 in 2000, $5,000 in 2002, $6,000 in 2004, and $11,000 in 2005. The court also concluded that

4

a deviation from the guidelines was proper given the validity of the prenuptial agreement between the parties. Thus, calculating the amount owed under the agreement, the court concluded that Husband owed Wife $70,000 in back child support. Such amount, the court stated, should be offset against the $7,452 owed by Wife to Husband under the guidelines. Thus, Husband was ordered to pay Wife $62,548 in back child support.

Husband appeals. He argues that the court improperly considered the prenuptial agreement in calculating the amount of child support owed to Wife. He also contends that the court improperly considered several irregular gifts against his gross income. We analyze those issues below.

**DISCUSSION**

**I. Standard of Review**

We generally review a district court's determination of child support for abuse of discretion. *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16 (filed 1998). We observe, however, that its discretion "must be exercised in accordance with the child support guidelines." *Id.* Likewise, a district court abuses its discretion when it incorrectly applies a standard, applies the wrong substantive law, or premises a discretionary decision "on a misapprehension of the law." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (filed 2004) (internal quotation

marks and citation omitted). Thus, to the extent we must determine questions of law, we do so de novo. *Id.* We also review the court's findings of fact for substantial evidence. *Styka*, 1999-NMCA-002, ¶ 8.

Prenuptial agreements are contracts. *Lebeck v. Lebeck*, 118 N.M. 367, 373, 881 P.2d 727, 733 (Ct. App. 1994). Accordingly, the party who raises the agreement must establish its existence and terms. *Id.* If "the agreement appears [to be] fair and reasonable on its face, the party claiming the invalidity of the agreement, or a particular provision [thereof], bears the burden of establishing" that invalidity. *Id.* If, however, the agreement appears unfair on its face, the party who first raised it bears the burden of proving its validity. *Id.* The trend is toward enforcing such agreements "even if one party has given up all his or her rights in the property of the other." *Id.* at 374, 881 P.2d at 734.

**II.     Consideration of the Parties' Prenuptial Agreement**

Husband argues that the district court improperly deviated from the guidelines by choosing to enforce the child support provision in the prenuptial agreement. He contends that Section 40-4-11.1 constitutes the exclusive means by which a court may determine support, and any decision to enforce a child support agreement made in advance contravenes those guidelines. Such a decision, Husband argues, would likewise violate our state's strong public policy favoring a district court's ultimate

6

discretion in making support determinations. On the facts before us, we are unpersuaded by Husband's argument.

To the extent as he asserts the child support guidelines as an absolute requirement, Husband is correct. *See Grant v. Cumiford*, 2005-NMCA-058, ¶ 25, 137 N.M. 485, 112 P.3d 1142 (holding that in New Mexico, "the setting of child support is within the sound discretion of the district court, exercised in accordance with the child support guidelines") (internal quotation marks and citation omitted). Those guidelines provide

> In any action to establish or modify child support, the child support guidelines as set forth in this section *shall be applied* to determine the child support due and shall be a rebuttable presumption for the amount of such child support. Every decree or judgment of child support that deviates from the guideline amount shall contain a statement of the reasons for the deviation.

Section 40-4-11.1(A) (emphasis added). The statute's imperative language gives the district court no choice; it must apply and reach a conclusion under the guidelines. *Id.* After reaching that conclusion, however, the court may deviate from the guidelines so long as its reasons for doing so are made explicit in the decree or judgment. As the subsequent section, NMSA 1978, § 40-4-11.2 (1989), commands, "[a]ny deviation from the child support guideline amounts set forth in Section 40-4-11.1 . . . shall be supported by a written finding in the decree, judgment or order of child support that

7

application of the guidelines would be unjust or inappropriate." *See Tedford v. Gregory*, 1998-NMCA-067, ¶¶ 32-33, 125 N.M. 206, 959 P.2d 540 (holding that the district court must make specific findings of fact when it deviates from the guidelines). The district court is vested with ultimate discretion in setting the amount of child support so long as it supports any deviations from the guidelines with written findings. As such, any agreement to establish child support prior to dissolution is subject to judicial modification. *See Spingola v. Spingola*, 91 N.M. 737, 741, 580 P.2d 958, 962 (1978).

This policy is well-established in our caselaw and reflected in the Uniform Premarital Agreement Act. NMSA 1978, § 40-3A-4(B) (1995). As our Supreme Court held in *Spingola*, "[t]he rights of the children, as innocent third parties, are involved in these agreements. To make such an agreement nonmodifiable would not be in the best interests of the children and for this reason is . . . against the strong public policy of New Mexico." 91 N.M. at 741, 580 P.2d at 962. In addition to the guidelines, a district court "may consider any other circumstances that bear on the parents' ability to provide needed support." *Id.* at 744, 580 P.2d at 965; *see In re Adoption of John Doe*, 98 N.M. 340, 346, 648 P.2d 798, 804 (Ct. App. 1982) ("[m]arital separation agreements and agreements regarding child custody and support, like judicial decrees awarding child custody and fixing an amount of child

8

support, are subject to modification by the court whenever substantial circumstances render such change proper and the best interests and welfare of the child[] so require").

This Court's opinion in *Ingalls v. Ingalls*, 119 N.M. 85, 888 P.2d 967 (Ct. App. 1994), weighed similar considerations to those now before us. In that case, husband pre-paid child support to wife and argued that he should receive credit for such pre-payments in the district court's determination under the guidelines. The district court agreed and credited husband. *Id.* at 87, 888 P.2d at 969. On appeal, this Court reversed but nevertheless held that such prepayments may be considered by the district court alongside the guidelines. *Id.* at 88-89, 888 P.2d at 970-71 (stating that "an agreement between the parties, express or implied, to the effect that [h]usband would 'prepay' child support in exchange for a reduction in such payments in the future, coupled with actual payment in this manner, should receive serious consideration by the trial court"). Yet, such agreements may not control the parties' child support relationship absolutely. A "child's present and future welfare takes precedence over the rights of the court-designated payor and payee of child support payments. Thus . . . child support payments are always subject to the further order of the court." *Id.* at 88, 888 P.2d at 970 (internal quotation marks and citation omitted). "[P]arties cannot by their own private action bind the hand of the court[.]" *Id.* And

as the New Mexico Uniform Premarital Agreement Act provides, "[a] premarital agreement may not adversely affect the right of a child[.]" Section 40-3A-4(B); *see Williams v. Williams*, 109 N.M. 92, 99, 781 P.2d 1170, 1177 (Ct. App. 1989) (holding that "parties cannot agree to waive future child support obligations because this is a matter to be determined by the courts").

The district court in this case complied entirely with these principles. Foremost, we observe that the plain language of the prenuptial agreement places no limits on the amount of child support to be paid by Husband. It only provides a bottom threshold below which support may not fall. The term provides that in the event of separation, Husband will pay Wife $500 per month "or such higher amount as a court of competent jurisdiction may order." We are aware of no rule that forbids a district court from considering such language in conjunction with the statutory guidelines; in fact, under our jurisprudence, a district court may legally consider language creating an absolute *maximum* of support, so long as it does so in accordance with the guidelines. What is more, the parties' pleadings before the district court indicate their agreement; both agree that the guidelines are the ultimate controlling authority with regard to child support calculations. Their disagreement lies in how the prenuptial agreement should be used in conjunction with those guidelines. Husband, on the one hand, originally argued that the prenuptial agreement should be enforced insofar as

10

Wife expressly waived any claims to various real and personal property owned by him. Wife, on the other, argued as an affirmative defense that the child support term should also be considered. The district court agreed with Wife, and we hold it did not abuse its discretion when it did so.

The above statutes and caselaw allow a district court to deviate from the guidelines as long as it determines the appropriate amount of support under the guidelines while clearly discussing the reasons for its deviation. The court below did that. It calculated the amount of support owed by Wife to Husband under the guidelines. It then found that "[t]he Prenuptial Agreement was validly executed and . . . a binding contract." Husband had the burden to demonstrate the unenforceability of that contract, the court concluded, and he failed to do so. Thus, the amount owed by Wife under the guidelines was offset by the amount owed by Husband under the agreement. *See Lebeck*, 118 N.M. at 373, 881 P.2d at 733 (holding that the party who asserts the invalidity of a prenuptial agreement bears the burden of establishing that invalidity). Our policy gives courts the ultimate discretion to establish child support, and the court in this case properly exercised that discretion. The district court was not bound by the prenuptial agreement; but it considered the agreement as it evaluated a deviation from the guidelines, as shown by the fact that it ordered an offset between the result under the guidelines and the result under the prenuptial agreement.

We likewise reject Husband's argument that the child support term was unenforceable because Wife failed to meet a condition precedent. He asserts that he and Wife entered into the term with the understanding that he would pay child support only if she remained Child's primary caregiver; because Child spent the majority of his time with Husband, the term must therefore be invalid. Such a contention finds little support in the record. Admittedly, Wife's testimony seems to indicate that she expected to receive child support and presumed that Child would live with her most of the time. But her testimony does not prove Husband's contention that a bargain was struck. More persuasive is the plain language of the prenuptial agreement, which does not condition Husband's payment upon Child residing with Wife. We therefore hold that substantial evidence supports the district court's finding that Husband's promise to pay child support was unconditional.

### III. Consideration of Irregular Gifts Against Husband's Gross Income

Husband received four gifts from his mother's estate between 2000 and 2005. He received $20,000 in 2000, $5,000 in 2002, $6,000 in 2004, and $11,000 in 2005. The district court factored these into Husband's gross income when it established child support under the guidelines. Husband argues that it did so erroneously. We agree.

In order to properly set the amount of child support under the guidelines, the district court must calculate the parties' gross income under Section 40-4-11.1(C). *See* Section 40-4-11.1(E). In pertinent part, that section defines "gross income" as

> income from any source and includes but is not limited to income from salaries, wages, tips, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, significant in-kind benefits that reduce personal living expenses, prizes and alimony or maintenance received.

Section 40-4-11.1(C)(2). In *Styka*, this Court analyzed the question of whether gifts to a party could be considered against that party's gross income. We held that as a general rule they may not be considered, because "[t]he wording of our statute is more analogous to those in jurisdictions that have not generally included gifts as income." 1999-NMCA-002, ¶ 24. Nevertheless, when a court determines that deviation from the guidelines is appropriate, it may consider "*periodic, dependable gifts* in gross income." *Id.* ¶ 25 (emphasis added). As to what constitutes a "periodic, dependable gift," *Styka* provides the only example in our caselaw. It holds that a lower court properly disregarded gifts to a party totaling $10,000 per year for nine consecutive years. *Id.* ¶ 19, 25.

In its written conclusions of law, the court cited *Styka* for the proposition that "[s]ettlement monies and family gifts are included in the calculation of gross income

13

for determining child support." As such, the court concluded that a deviation from the guidelines was appropriate. Based on our reading of *Styka*, this is a misapprehension of the law. As we discussed above, that opinion holds that a court may consider gifts in gross income when it finds that they were "periodic" and "dependable." *Id.* ¶ 25. The district court in this case made no such determination. Furthermore, even if we infer that the court made such a finding, there is no evidence in the record to support it. As discussed above, Husband received $20,000 in 2000, $5,000 in 2002, $6,000 in 2004, and $11,000 in 2005. Based on these numbers, we discern no periodic, dependable pattern at all. Although each gift came from Husband's mother's estate, each constitutes a different amount ranging from $5,000 to $20,000. There were no gifts in the years 2001 and 2003, and we note neither a steady increase nor a steady decrease in the gift amounts. *Styka* held that the lower court properly refused to consider annual gifts of $10,000 received from the same source over nine consecutive years. *Id.* ¶ 19, 25. The gifts here were insufficiently dependable to justify counting them as income, and we reverse the district court on this issue.

**CONCLUSION**

Based on the analysis above, we affirm the district court's enforcement of the prenuptial agreement against Husband, but we reverse the court's consideration of Husband's irregular gift income under the child support guidelines. We remand to the

14

district court for a recalculation of the parties' gross income and child support under the guidelines.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**