784 P.2d 420

**Sondra Ann HOPKINS,**
**Petitioner–Appellee,**

v.

**Johnny Eldon HOPKINS,**
**Respondent–Appellant.**

No. 10537.

Court of Appeals of New Mexico.

Nov. 21, 1989.

Morris Stagner, Clovis, Winston Roberts–Hohl, Santa Fe, for petitioner-appellee.

David F. Richards, Garrett & Richards, Clovis, for respondent-appellant.

## OPINION

MINZNER, Judge.

Father appeals from an order holding him in contempt for non-payment of child support and for failing to pay certain community debts he was ordered to pay at the time of his divorce from mother. Father has briefed four issues: the district court erred (1) in calculating the amount of past due child support; (2) in refusing to reduce

his monthly payments; (3) in holding him in contempt for failure to pay certain debts, because those debts had been discharged in bankruptcy; and (4) in entering judgment for mother in the amount of $62,902. The first two issues briefed ultimately depend on whether there was sufficient evidence to support the trial court's findings. The third issue briefed presents issues of first impression in New Mexico. They are: (a) what test a state district court should apply in determining that a divorce decree provision that one spouse must pay a debt due a third party creates a non-dischargeable support obligation under 11 U.S.C.S. Section 523(a)(5) (1986 and Cum.Supp.1989); and (b) whether a court may modify its prior divorce decree under SCRA 1986, Rule 1–060(B)(6) to identify a non-dischargeable support obligation. We affirm as to father's first two issues, except that we reverse and remand for entry of an amended judgment giving father additional credit for past payments made directly to mother. We affirm in part, reverse in part, and remand for further proceedings as to father's third issue. In view of our disposition of father's third issue, we do not reach the fourth issue.

### BACKGROUND.

Father and mother were married in 1968 and filed for divorce in 1982. The divorce became final in 1984 when the parties entered into a stipulated final decree. The agreement provided for the division of property and debts and awarded the parties joint legal custody of their two minor children, with primary physical custody given to mother. Father agreed to pay $500 per month in child support and provide medical insurance for the children. The decree specifically stated that no alimony was awarded.

Mother was to keep the 3000 square foot family residence on three acres and to assume responsibility for the first mortgage on the property. Father also agreed to assume $300,000 in personal and business community debts associated with the feed lot which he operated during the marriage. The debts included notes to the First National Bank in Clovis (First National) and

the Small Business Administration (SBA), secured by second and third mortgages on the family residence.

In 1985, father filed for bankruptcy in Kansas. He named both First National and the SBA as creditors, but did not name mother. Although mother had actual knowledge of the bankruptcy action, she was not given formal notification and had no knowledge of the injunction prohibiting creditors from bringing actions against the debtor while the bankruptcy was pending. An order of discharge of all debts was filed December 10, 1985.

While the bankruptcy action was pending, the younger child decided to live with her father in Kansas. In December 1985, father informed mother and the Curry County Child Support Unit (CSU) that he was reducing his child support payments to $250 per month, beginning with the October 1985 payment.

In 1986, the SBA instituted foreclosure proceedings against mother on the family home. SBA did not name father as a party. A default judgment was entered against mother. The home was sold to her neighbors for $39,650. First National was paid in full from the proceeds of the sale; the SBA did not seek a deficiency judgment. The neighbors verbally agreed to allow mother to purchase the second mortgage from them for the price they paid at the foreclosure sale. Mother has remained in the home continuously since the divorce.

In 1987, mother filed a motion for contempt in state court seeking a judgment against father for failure to pay the sums due First National and the SBA and for delinquent child support payments. At the same time, father filed a motion seeking custody of the daughter and reduction of child support from $500 to $250 per month.

The district court denied his motion for reduction in child support, awarded mother a judgment for $6,000 in child support arrearages, and continued joint custody as to both children, but awarded father primary care and custody of the daughter. The court characterized father's obligation to pay the second and third mortgages as in

the nature of support and ordered him to execute a note for $62,902, secured by a mortgage on any real property he then owned.

On February 3, 1988, father filed a motion to reopen the Kansas bankruptcy proceedings and sought an injunction to prevent mother from enforcing the district court's judgment. The bankruptcy court filed an order reopening the bankruptcy case on February 25, 1988. A few days later, father appealed to this court from the judgment of the district court, but his appeal was stayed pending the decision of the bankruptcy court.

The bankruptcy court found that mother had actual knowledge of husband's bankruptcy proceedings, but that she was not given actual written notice of either the filing or of the injunction prohibiting creditor's actions. The bankruptcy court refused to enjoin mother from proceeding to enforce the district court's judgment. The court reasoned that mother was not in contempt of any order of the bankruptcy court and that it would be inappropriate for the bankruptcy court to bar her from bringing proceedings in state district court or otherwise to interfere with state court jurisdiction in domestic relations matters.

COMPUTATION OF PAST DUE CHILD SUPPORT.

There are several issues on appeal regarding past due child support. The first is whether the lower court improperly refused to credit father for child support payments made directly to mother. There is also an issue as to whether father should have been credited for the proceeds of the sale of livestock he bought for the children. The final issue regarding past due child support is whether the trial court erred in refusing to find that mother was barred by laches, acquiescence, or waiver. All of these issues ultimately depend on whether there was sufficient evidence to support the trial court's findings.

According to the records of the CSU, father was $5,000 to $7,000 in arrears as of September 1987. However, evidence at trial showed that he had not been credit-

ed for $1,400 directly paid to mother. She contends that some of the checks for which he claims credit were actually sent to replace earlier bad checks.

The evidence at the hearing indicated that a wire transfer of $500 was the only money used to replace earlier bad checks. Mother contends in her reply brief that some of the other checks she received were sent to replace prior bad checks. However, there is no evidence in the record that any other checks should not have been credited. Thus, this response does not present an appellate issue. *See State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979). We conclude that father should have been given an additional $900 credit for child support payments, but that the balance of the award for past due child support should be affirmed.

Father also contends that he did not receive credit for livestock he purchased for the children. He testified that he borrowed the money from a bank to buy the livestock and that the sale proceeds were to be applied toward that indebtedness. The livestock was sold for $1,000, but mother never gave the proceeds of the sale to father. Instead, he says she used the money for the benefit of the children but failed to credit him with $1,000 in child support. Based on this belief, he withheld two months of child support and was charged with an arrearage in the records of the CSU.

Mother contests father's view. She says the money for the livestock came from the children's own accounts; therefore, the proceeds did not belong to husband. Father denied this at trial.

It is not clear why the proceeds from the sale of the livestock should have been credited as child support, and thus the factual discrepancy is not important. If the money to buy the livestock belonged to the children, it certainly could not be credited as child support. If father borrowed the money but purchased livestock for the children, the court was entitled to have considered the livestock a gift. In that situation, the proceeds belonged to the chil-

dren, and father also was not entitled to credit. As a general rule, a non-custodial parent will not be permitted credit against court-ordered child support obligations for gifts given to the children. *See generally* Annotation, *Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for Other Voluntary Expenditures,* 47 A.L.R.3d 1031 (1973). There is no evidence that mother and father ever agreed that the proceeds would replace certain child support payments. Consequently, we believe the trial court did not err in refusing to grant credit against the arrearages for the amount realized for the sale of the livestock. *See McBride v. McBride,* 708 S.W.2d 738 (Mo.Ct.App.1986) (general rule is that no credit is allowed for support paid other than as ordered, except under equitable considerations, such · as when such support is provided with consent that it is in lieu of decreed support or when provided under compulsion of circumstances).

■ Father contends that the trial court erred in failing to modify the sum he owed mother for past due child support. His contention arises out of the fact that the younger child has resided with him since 1985. He claims the trial court should have reduced the arrearages by $250 a month from the time the younger child began living with him. We disagree.

■ The general rule in New Mexico is that a court should not retroactively modify child support or alimony awards. *See Chrane v. Chrane,* 98 N.M. 471, 649 P.2d 1384 (1982). However, in the context of contempt proceedings, the court has the power to consider any valid defense, including substantial change in circumstances, payment from another source, or equitable defenses such as laches and waiver. *Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980); *see Brannock v. Brannock,* 104 N.M. 416, 722 P.2d 667 (Ct.App.1985). The trial court has broad discretion in accepting or rejecting such defenses. We understand father's defense to be laches or waiver.

One of the essential elements of laches or waiver is a delay in assertion of rights. *Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970). Father cites this court's decision in *Brannock* for the proposition that mother waived her right to seek collection of past due child support by not objecting to the reduction in child support for a period of almost two years. However, in *Brannock,* the court found an express agreement to accept support payments in an amount less than that ordered by the decree. Here, on the other hand, the evidence regarding mother's acquiescence in agreement to the lower payments is conflicting. Mother testified that she contacted father on at least six occasions and that she also notified the CSU of her objection to a reduction in child support. Thus, this case is distinguishable from *Brannock.*

Father's reliance on *Daniel v. Daniel,* 239 Ga. 466, 238 S.E.2d 108 (1977) is misplaced. In *Daniel,* the judicial decree specifically stated that the father was to pay no child support during certain months he had custody, pursuant to the divorce decree. Subsequently, the mother and the father agreed that he would take custody for other months while she returned to school. The father believed that their oral agreement to support the children during the additional months excused him from paying the mother child support. On appeal from a decision awarding the mother unpaid child support for this period, the appellate court reversed and noted that although a parent is not entitled as a matter of law to credit for voluntary expenditures, he or she may be given credit if equity dictates under particular circumstances. The court held that on the facts of the case, the father was entitled to credit.

Here, however, father has not argued any equitable circumstances to justify a reduction other than his support of the younger child while she was in his custody and mother's alleged acquiescence. The record reveals none. On this record, we do not believe the trial court abused its discretion in rejecting father's defense. *Id.*

## FAILURE TO MODIFY FUTURE CHILD SUPPORT.

■ Father's argument that the trial court should have reduced his future child

support obligations is similar to his argument that his past child support obligation should have been reduced. The well-established general rule is that an undivided support award directed at more than one child is presumed to continue in force for the full amount until the youngest child reaches majority. *Britton v. Britton,* 100 N.M. 424, 671 P.2d 1135 (1983). Here, the divorce decree did not specify that $250 of the $500 was for each child. Father presently makes almost twice as much as mother, and her basic expenses remain the same, regardless of the number of children in her custody. We conclude the trial court did not abuse its discretion in refusing to modify the award. *See Spingola v. Spingola,* 91 N.M. 737, 580 P.2d 958 (1978).

**WHETHER THE NEW MEXICO DISTRICT COURT ERRED IN HOLDING HUSBAND IN CONTEMPT FOR FAILURE TO PAY THE SECOND AND THIRD MORTGAGES ON THE HOME.**

Father contends that the trial court erred in holding him in contempt because the debt he was ordered to pay had been discharged in bankruptcy. He reasons that the trial court erred in characterizing the divorce decree provisions ordering him to pay the second and third mortgage payments as *"actually in the nature of* alimony, maintenance or support" under Section 523(a)(5)(B) (emphasis added) and in concluding that the obligation imposed had not been discharged. He argues that his assumption of the obligation to pay the mortgages was in the nature of a property division. In addition, he finds fault with what he characterizes as an improper modification of the original divorce decree to include alimony where previously no obligation existed. *See generally Benavidez v. Benavidez,* 99 N.M. 535, 660 P.2d 1017 (1983) (no alimony having been awarded initially, court cannot award it later pursuant to Rule 60 in order to afford relief for a free and conscious choice). We discuss father's arguments under two sub-headings.

*(A) The Determination that a Debt Due a Third Party Creates a Non–Dischargeable Support Obligation Under Section 523(a)(5).*

Two different kinds of obligations are involved in this case. The first is the obligation owed the second and third mortgage holders. The second is the obligation to the former spouse and child to keep those payments current. We are not concerned here with the first obligation, which was discharged. Rather, we are concerned with the issue of whether father owed a separate non-dischargeable obligation of support to mother or the children to keep the payments current. If the state district court correctly found that father's obligation to pay was non-dischargeable, he is subject to the court's contempt power if he failed to pay. *See Sosaya v. Sosaya,* 89 N.M. 769, 558 P.2d 38 (1977).

The bankruptcy court and the state district court have concurrent jurisdiction to determine whether a debt arising out of the divorce agreement is dischargeable under Section 523(a)(5). 3 L. King, *Collier on Bankruptcy* § 523.15 at 523–114–15 (15th ed. 1989).[1] However, characterization of a debt as being "in the nature of alimony, maintenance, or support" must be made under federal bankruptcy law, not state law. *Benavidez v. Benavidez; In re Yeates,* 807 F.2d 874 (10th Cir.1986); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). *See also* 3 L. King, *supra,* § 523.15 at 523–105. The relevant statute is 11 U.S. C.S. Section 523(a)(5) (Cum.Supp.1989), which provides:

> (a) A discharge under section 727, 1141, * * * or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * * * * *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or

---

1. When such a debt is in question, either the debtor or the creditor *may* file a complaint with the bankruptcy court for determination of dischargeability of the debt; however, neither is required to file there. If the debtor files, he must do so before any action is commenced in any other forum. 3 L. King, *supra,* § 523.15 at 523–115, citing Bankruptcy Rule 4007.

child, in connection with a separation agreement, divorce decree or other order of a court of record * * * or property settlement agreement, but not to the extent that—

* * * * * *

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually *in the nature of alimony, maintenance, or support*[.] [Emphasis added; citations omitted.]

 Here, the bankruptcy court never determined whether there was an obligation to mother and, if so, whether it was discharged. Father argues that because mother had actual knowledge of the bankruptcy proceeding, his obligation to her should be discharged pursuant to Section 523(a)(3)(A). Father correctly cites this subsection as an exception to the non-dischargeability of unlisted debts. However, this subsection does not preclude this court from considering the nature of the debt in the first instance. If the debt is in the nature of support, it is not governed by Section 523(a)(3)(A). *See* 3 L. King, *supra,* § 523.15 at 523–114–15; *see also* § 523(c). There need not be a timely determination in bankruptcy court that such a debt is non-dischargeable. *Id.*

 We agree with father that mother had the burden of proving his obligation to her was "in the nature of alimony, maintenance, or support," and therefore non-dischargeable. *See In re Calhoun.* The district court in this case determined that wife met her burden of proof.

Father also argues that dischargeability and the policy of a fresh start are favored under the Bankruptcy Code. However, Section 523(a)(5) "departs from the general policy of absolution * * * that is embodied in the federal Bankruptcy Act. It enforces an overriding public policy favoring the enforcement of familial obligations." *Shaver v. Shaver,* 736 F.2d 1314, 1315–16 (9th Cir.1984) (footnote omitted).

 The trial court made a finding that father's obligation to pay the second and third mortgages was made in lieu of alimo-

ny and to provide a home for the children. This finding of fact was essential to its conclusion that the obligation was a specific agreement by father for support to his children and former spouse. *See Nelson v. Nelson,* 82 N.M. 324, 481 P.2d 403 (1971). Father argues that no evidence on the record exists to support this finding and conclusion. We disagree.

Federal courts look to the intent of the parties at the time they entered into the agreement. *E.g., In re Yeates; In re Calhoun; Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984); *see generally* S. Scheible, *Defining "Support" Under Bankruptcy Law: Revitalization of the "Necessaries" Doctrine,* 41 Vand.L.Rev. 1 (1988). One expression of intent is the language of the divorce decree or the separation agreement. A number of courts have held that such language does not necessarily control. 3 *Bankruptcy Service Lawyers Edition,* § 22:75 (rev. 1983) (hereinafter *"Bankr. Serv."*); 3 L. King, *supra,* § 523.15 at 523–113; *In re Calhoun; but see In re Yeates* (when written agreement is clear it normally controls).

In the case before this court, the final decree stated that no alimony would be paid. Immediately following that statement is the provision by which mother received the residence and agreed to pay the first mortgage on the home while father assumed the remaining community debts, including the second and third mortgages. Because the decree did not designate this provision as either support or property division, we need not here decide whether the language of a decree controls. In this case, the placement of the provisions in the decree lends support to the trial court's finding that the provision as to the mortgage payments was in lieu of alimony and in the nature of child support.

Where the decree is silent, or its language ambiguous, federal courts looking beyond the face of the decree search for extrinsic evidence to discover intent. 3 *Bankr.Serv.,* § 22:75 at 223. One factor is the dependent spouse's need for support. "[E]vidence that payment of the debt is necessary in order for the plaintiff to main-

tain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support." *In re Yeates*, 807 F.2d at 879. In this case, payment of the second and third mortgages was necessary for mother and the children to continue living in the family home. In addition, payment of the mortgages had "the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and * * * children of the marriage [were] satisfied." *In re Calhoun*, 715 F.2d at 1109 (emphasis in original). *See also In re Williams*, 703 F.2d 1055 (8th Cir.1983). Thus, because father's obligation functioned as support, a court could reasonably find that the parties intended the obligation as support, despite the absence of such wording in the agreement.

However, an inquiry into the intent of the parties should not end the analysis. Parties to a divorce decree do not necessarily neatly categorize provisions as support or property division on paper or in their own minds; neither are they aware of the possible future ramifications of such a categorization. In addition, property division has often been a substitue for traditional alimony payments. *See* S. Scheible, *supra*, at 9–14, 53. Thus, it is appropriate to look further.

The Sixth Circuit in *Calhoun* has extended the analysis to include an inquiry into the reasonableness of the award under "traditional concepts of support." *Id.*, 715 F.2d at 1110. This court recognizes that the reasonableness analysis has not been accepted by the other circuit courts. Those courts reason that an inquiry into the needs of the recipient spouse and the ability of the debtor spouse to pay is not for federal bankruptcy courts to conduct, but is better left for state district courts, which traditionally deal with domestic relations problems. *E.g.*, *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *In re Harrell*, 754 F.2d 902 (11th Cir.1985). However, such an approach is not inappropriate here, because the issue arises in state district court. In addition, we believe that utilizing this test corresponds with congressional intent that courts determine the essence of a

debt which "is" in the nature of support. *See* S. Scheible, *supra*, at 55. This reading of the statute is appropriate, even in the absence of express wording concerning "undue hardship," which is included in Section 523(a)(8)(B). We do not equate the concept of "undue hardship" with the concept of reasonableness, and, in any event, we view the concept of reasonableness as inherent in the congressional focus on the present nature of a debt.

When a court considers reasonableness, it must resolve the question of whether, at the time the debts were assumed, the obligation exceeded the debtor's ability to pay. *In re Calhoun*. If the obligation assumed by the debtor is "manifestly unreasonable under traditional concepts of support," the court must set a reasonable limit to the nondischargeability of the debt. *Id.* at 1110. Determination of reasonableness must be made both at the time the obligation was assumed and at the time of the bankruptcy. *Id.* In making that determination, the court must consider the relative earning ability of each of the parties, their financial status including other means of support, and prior work experience or abilities of the parties to determine how much of the debt assumed can be fairly construed as being in the nature of support. *Id.*

In this case, the trial court did not determine the reasonableness of the obligation as support. Under the Sixth Circuit's analysis in *Calhoun*, this is an ultimate fact upon which the conclusion reached by the trial court depends. *See generally Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968) (ultimate facts are the essential and determinative facts upon which á conclusion is reached). Thus, we conclude the case must be remanded so that the trial court may make findings concerning the reasonableness of the obligation both at the time of the decree and at the time of the bankruptcy. The court, if it wishes, may take additional evidence.

For the foregoing reasons, we hold that there was sufficient evidence to support the trial court's finding that father's obli-

gation to pay the second and third mortgages was in lieu of alimony and to provide a home for the children. We view this finding as an implicit determination that the parties intended to create a support obligation and that this obligation functioned as support. However, we remand the case to permit the trial court to consider the reasonableness of father's obligation to mother both at the time of the decree and at the time of the bankruptcy, according to the third step of the test set forth in *Calhoun.*[2]

*(B) Modification of a Prior Divorce Decree Under Rule 1–060(B)(6) to Identify a Non–Dischargeable Support Obligation.*

 Father next argues that the trial court's finding that father's obligation to mother and the children was a non-dischargeable support obligation improperly modifies the original divorce decree to include alimony where previously none existed. *Benavidez* held that alimony cannot be awarded after the entry of a final decree, unless appropriate under Rule 1–060. In that case, the court did not allow modification of a final decree by adding alimony that did not exist in the original decree. *Id.* Wife claimed she was entitled to the alimony because husband was discharged in bankruptcy from a mortgage debt on the couple's residence to Citicorp. In that case, however, the original decree did not mention the debt owed to Citicorp. *Id.* In the case before this court, the original decree did include father's obligation to pay all outstanding debts, except the first mortgage, which was to be assumed by mother. Therefore, in this case the obligation is not one which is to be added to the decree, and the supreme court's holding in *Benavidez* did not preclude the trial court from finding that a support obligation existed in the original decree.

 In addition, the supreme court noted that a modification of the original decree

adding alimony could be made if appropriate under Rule 1–060. "Rule 60(b) has been recognized as providing a reservoir of equitable power in order to accomplish justice." *Koppenhaver v. Koppenhaver,* 101 N.M. 105, 108, 678 P.2d 1180, 1183 (Ct.App. 1984). Rule 1–060(B)(6) allows relief for any reason not delineated if such relief is justified. Thus, the trial court could allow modification of the decree to include a support obligation if it believed that such modification was justified.

Father argues that mother failed to show the exceptional circumstances justifying relief required by this court in a Rule 1–060(B) motion. *See Mendoza v. Mendoza,* 103 N.M. 327, 706 P.2d 869 (Ct.App.1985). In her motion for relief under Rule 1–060(B), mother contends that the foreclosure of the family home justifies relief under the rule. We believe that such circumstances are sufficiently exceptional to allow the court to utilize the rule to identify any support obligation within the original decree.

This court recognizes that although father's obligation to pay the second and third mortgages was present in the decree, it was not identified as an obligation to mother and children. If the trial court ultimately determines that any part of this obligation is in the nature of spousal or child support, this determination may be reflected in a modification of the decree in the interests of substantial justice pursuant to Rule 1–060(B)(6).

## DID THE TRIAL COURT ERR IN AWARDING MOTHER THE ENTIRE AMOUNT OF LOST EQUITY RESULTING FROM NON–PAYMENT OF THE MORTGAGES.

The district court determined that at the time of the divorce, the family home had a value of $100,000, and that the first mortgage, which mother assumed, was for $37,-098. It also determined that father's failure to pay the second and third mortgages

---

**2.** "In an attempt to clarify the appropriate standard, the *Calhoun* court proposed a three-step test based on separate inquiries into the following: the intent of the court or the parties creating the obligation; the actual effect of the liabil-

ity in providing for the necessary support of the debtor's dependents; and the reasonableness of the debt, both at the time of its creation and at the time of the bankruptcy action." S. Scheible, *supra,* at 51.

on the property caused mother to lose $62,-907 in equity because of the foreclosure sale.

Father believes that if the court finds him liable on this debt at all, he should be obligated to pay only the $39,650 which mother would have to pay to obtain total equity in the home. He argues that $39,-650 is all that is required to put mother in the position she would have been in if father paid the mortgage debts.

The ultimate validity of the award depends on a determination that mother was awarded a non-dischargeable support obligation. We have concluded that the trial court must inquire into whether the obligation was reasonable at the time of the divorce and at the time of the bankruptcy and, to the extent it is not reasonable in its entirety, the court must set a reasonable limit to the non-dischargeability of the debt. On the record before us, we cannot determine what the extent of the obligation was. Thus, we do not decide father's fourth issue.

CONCLUSION.

We affirm the district court's decision awarding mother past due child support, but reverse and remand for entry of an amended judgment giving father credit for an additional $900 in payments made directly to mother. We also affirm the district court's decision to deny father's request that his future child support obligation be reduced. Finally, we reverse the trial court's decision that the debts father was ordered to pay in the divorce decree were in the nature of a support obligation and nondischargeable, but we remand for further proceedings not inconsistent with this opinion. No costs are awarded. Mother's request for attorney fees on appeal is denied. On remand, if mother is awarded additional attorney fees, the trial court should take the efforts of mother's counsel on appeal into account.

ALARID and APODACA, JJ., concur.