**In the Matter of Jan Ellen CLINE, Debtor.**

**Bankruptcy No. BK89–40888.**

United States Bankruptcy Court, D. Nebraska.

March 22, 1990.

Trev Pederson, for debtor Jan Cline.

Lance Johnson, Hebron, Neb., for Marion Cline and Joseph H. Murray.

## JOURNAL ENTRY

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

THIS MATTER came before the court on a telephone hearing to determine whether acts by the debtor's former spouse to collect a debt arising out of a divorce decree violated the automatic stay. The issue arose in the context of debtor's Motion for Imposition of Damages Against Marion G. Cline and Joseph H. Murray for Violation of the Automatic Stay (Fil. # 8). Mr. Trev Pederson appeared on behalf of debtor, Jan Cline. Mr. Lance Johnson appeared on behalf of Mr. Cline and Mr. Murray.

## FACTS

Jan Cline, debtor, filed Chapter 7 bankruptcy on August 18, 1989. On December 1, 1988, prior to filing bankruptcy, Jan

Cline was divorced from Mr. Marion Cline. Pursuant to the state court order and divorce decree, Jan Cline assumed certain debts and agreed to hold Mr. Cline harmless from any claim of creditors relating to the debts. Jan Cline did not, in fact, pay the debts as required by the state court decree.

After the filing of this bankruptcy proceeding, the National Bank of Commerce ("NBC"), a holder of a debt Jan Cline was to pay under the state court decree, commenced an action against Mr. Cline for the balance due on the debt. Mr. Cline and his legal counsel, Joseph Murray subsequently initiated two acts against Jan Cline. First, Mr. Cline and Mr. Murray garnished Jan Cline's checking account. Second, Mr. Cline and Mr. Murray filed a motion to add Jan Cline as a defendant in the NBC collection action. A hearing has not been held in state court on the motion.

At the time the garnishment was initiated and the motion to add Jan Cline was filed, Mr. Cline and Mr. Murray had knowledge of the pendency of this bankruptcy case. Mr. Cline and Mr. Murray appeared on the matrix in this case and received notice of the first meeting of creditors and of the automatic stay under § 362. Neither Mr. Cline nor Mr. Murray requested or was granted relief from the automatic stay to commence the acts against Jan Cline.

At the hearing in this matter, Jan Cline asserted that the actions of Mr. Cline and Mr. Murray willfully violated the automatic stay of 11 U.S.C. § 362. However, Mr. Cline and Mr. Murray contend that their actions did not violate the automatic stay. Mr. Cline and Mr. Murray argue that the debt sought to be collected by them against Jan Cline was in the nature of alimony, maintenance or support and is excepted from the automatic stay under § 362(b)(2). The issue before the court is thus whether the actions of Mr. Cline and Mr. Murray willfully violated the automatic stay and, if so, to what extent damages should be imposed against Mr. Cline and Mr. Murray. A determination of this issue depends upon whether the obligation of Jan Cline under the state court divorce decree to assume certain debts and hold Mr. Cline harmless therefrom is in the nature of alimony, maintenance or support. Under § 362(b)(2), the automatic stay does not prohibit the collection of alimony, maintenance or support from property that is not property of the estate.

## DISCUSSION

I conclude that the obligation of Jan Cline under the divorce decree to assume certain debts and hold Mr. Cline harmless is not in the nature of alimony, maintenance or support. Therefore, I conclude that the actions of Mr. Cline and Mr. Murray willfully violated the automatic stay and that sanctions should be imposed against Mr. Cline and Mr. Murray.

■ Whether an obligation is in the nature of support or a property settlement between parties is a question of federal bankruptcy law, not state law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). The determination of whether an obligation is support for bankruptcy purposes is a question of fact to be decided by the bankruptcy court. *Id.* at 1057–58. Further, in deciding whether to characterize an obligation as support or a property settlement, the bankruptcy court should not examine the present situation or financial needs of the parties. Rather, the crucial issue is the function the parties intended the obligation to serve at the time of the agreement. *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984); *Draper v. Draper*, 790 F.2d 52, 54 & n. 3 (8th Cir.1986).

It should first be noted that although support obligations are commonly paid directly to a former spouse, a support obligation may take the form of an assumption of debt and agreement to hold the former spouse harmless from creditors relating to the debt. *See Williams*, 703 F.2d at 1055; *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982); *In re Coil*, 680 F.2d 1170, 1171 (7th Cir.1982).

■ Several courts have compiled a list of factors to consider in determining whether parties intended an obligation to

be for support or part of a property settlement. These factors include the relative earning power of the parties and whether there was an imbalance of income; whether the agreement fails to explicitly provide for spousal support; whether there was a division of property and a division of debts related to that property; whether the payments are made directly to the former spouse and are made in installments over time; whether the obligation terminates on remarriage or death; the nature of the obligations assumed and whether the obligation is to pay expenses for necessities of life; whether the former spouse was shown to have suffered in the job market or was otherwise disadvantaged because of any dependent position held in relation to the debtor during the marriage; the age and health of the former spouse, and, in cases involving an agreement to assume a debt and hold a spouse harmless, whether the provision assuming the debt appears in the midst of provisions allocating property and whether the provision describes the method of payment. *See, e.g., In re Goin,* 808 F.2d 1391 (10th Cir.1987); *In re Coil,* 680 F.2d at 1171–72; *In re Bell,* 47 B.R. 284 (Bkrtcy. E.D.N.Y.1985).

█ Based on several elements of circumstantial evidence, I conclude that Jan Cline's assumption of debt and agreement to hold Mr. Cline harmless therefrom is a property settlement rather than an agreement for the support of Mr. Cline and his dependents. The various elements of circumstantial evidence present in this case indicate that Jan Cline and Mr. Cline did not intend the obligations of Jan Cline under the divorce decree to be for the support of Mr. Cline. First, the respective incomes of Jan Cline and Mr. Cline are similar in amount, and the divorce decree ordered Jan Cline to make child support payments on a monthly basis. Thus, there is not an imbalance of income which would indicate than Jan Cline would make payments under the divorce decree for the support of Mr. Cline in addition to the payments intended for child support.

Second, Jan Cline is not required to make payments over time, and her obligation to pay the assumed debts does not terminate upon the death or remarriage of Mr. Cline.

Third, in considering the nature of the debt assumed by Jan Cline, I conclude that the debt is not of the type associated with support. The debts assumed by Jan Cline consist of three credit card bills, a hospital bill and a small doctor bill. The hospital bill is for services provided to Jan Cline personally and relates solely to Jan Cline. The credit card bills are for past purchases of the parties. Although I have no information respecting the items purchased with the credit cards, the debts are nevertheless for past purchases and not for expenses related to future support. Thus, I conclude that the debt assumed by Jan Cline is not of the type associated with support.

Fourth, Jan Cline paid temporary child support during the pendency of her divorce from Mr. Cline, but she did not make any payments for the support of Mr. Cline. The absence of support payments for Mr. Cline before the divorce decree was entered indicates that such support was not necessary or intended under the divorce decree.

Fifth, both Jan Cline and Mr. Cline agreed to assume certain debts and hold the other party harmless therefrom. The provision wherein both parties agreed to hold the other harmless appears in the midst of provisions allocating property. Thus, the placement of this provision in the divorce decree indicates that Jan Cline and Mr. Cline intended the obligation of Jan Cline to be part of a property settlement.

Sixth, the total amount of debt assumed by Jan Cline is nominal in comparison to the amount of debt retained by Mr. Cline under the divorce decree. Jan Cline assumed approximately $6,400.00 of debt, and Mr. Cline assumed over $93,000.00 of debt and obtained custody of the party's two children. The children are ages seven and thirteen. Under these facts, there is an inference that the $6,400.00 assumed by Jan Cline was not intended as support for Mr. Cline or the two children. First, a payment of $6,400.00 is nominal when compared to the costs associated with the continuing support of children aged seven and thirteen. Second, in light of the total

amount of Mr. Cline's debt under the divorce decree, the total debt assumed by Jan Cline will not reduce the amount of Mr. Cline's obligation in any significant way. Thus, I conclude that Jan Cline's assumption of debt under the divorce decree was not for the purpose of allowing Mr. Cline to have additional resources for the support of himself and his dependents.

In short, all of the above factors suggest that Jan Cline's obligation under the divorce decree is not a support obligation. Furthermore, it is difficult to find any facts that suggest that the obligation of Jan Cline was intended as a support obligation. The facts of this case clearly favor a finding that the obligation of Jan Cline under the divorce decree was not intended to be a support obligation.

Based on the reasons set forth, I conclude that the obligations of Jan Cline under the divorce decree are part of a property settlement rather than for support. Therefore, the actions of Mr. Cline and Mr. Murray in garnishing Jan Cline's bank account and attempting to add Jan Cline as a party to the state court collection action violated the automatic stay. These were acts to enforce a property settlement obligation and not acts to collect a support obligation. Accordingly, the exception to the automatic stay for alimony, maintenance and support does not apply. Since I have concluded that the exception to the automatic stay does not apply to this case, it is not necessary to determine whether any funds which may have been in Jan Cline's bank account at the time of the garnishment could have been property of the estate.

■ Because the automatic stay applied in this case, I conclude that the actions of Mr. Cline and Mr. Murray violated the automatic stay. Mr. Cline and Mr. Murray had knowledge of Jan Cline's pending bankruptcy case. Even a superficial analysis of the facts would have suggested that the stay applied. Therefore, I conclude that the actions of Mr. Cline and Mr. Murray constituted willful violations of the automatic stay. Accordingly, sanctions should be imposed against Mr. Cline and Mr. Murray for such violation.

■ With respect to the extent to which sanctions should be imposed, I conclude that Jan Cline has incurred limited damages due to the actions taken by Mr. Cline and Mr. Murray. The garnishment proceeding commenced by Mr. Cline and Mr. Murray was a single garnishment, it was not continuing. Accordingly, the garnishment has not created a continuing problem for Ms. Cline. Further, at the time of the garnishment, Jan Cline's bank account had a negative balance. Thus, Mr. Cline and Mr. Murray did not obtain any funds as a result of the garnishment proceeding. With respect to the attempt to join Jan Cline in the state court collection action, no hearings have been conducted in state court on the motion. Accordingly, Jan Cline has not incurred any attorney fee damages in connection with appearances in the state court proceeding. Thus, the only damages incurred by Jan Cline are the attorney fees attributable in the instant action. The legal fees are extensive and involved attendance at a hearing, preparation of a motion and affidavits, and preparation of a brief which was submitted to the court on behalf of Jan Cline at the court's request. An affidavit filed by counsel for Jan Cline indicates a claim for legal services in the total amount of $1,318.50. However, I conclude that $1,318.50 is excessive and that compensation of Jan Cline's counsel shall be limited to $600.00. I conclude that sanctions should be imposed against Mr. Cline and Mr. Murray for willful violation of the stay in the amount of $600.00, and that Mr. Cline and Mr. Murray should be jointly and severably liable to Jan Cline for such amount. A separate judgment shall be entered consistent herewith.