**In re Donald Allen STAMPER, Debtor.**

**Brenda C. STAMPER, Plaintiff,**

v.

**Donald Allen STAMPER, Defendant.**

**In re Brenda C. STAMPER, Debtor.**

**NORWEST FINANCIAL, MISSOURI, INC., Movant,**

v.

**Brenda C. STAMPER, Respondent.**

Bankruptcy No. 91–41176.
Adv. No. 91–4133–3.
No. 91–41283–W–13.

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

Aug. 20, 1991.

Dana Church, Kansas City, Mo., for plaintiff Brenda C. Stamper.

Louis Wade, Kansas City, Mo., for movant Norwest Financial.

Lydia Carson, Kansas City, Mo., for defendant Donald Stamper.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The Stampers are ex-spouses. There are two matters before the Court. The first is the Complaint to Determine the Dischargeability of Debt, filed by Brenda C. Stamper in the Donald Stamper case. The second is a motion to lift the automatic stay filed by Norwest, which has a lien on a motor vehicle which is central to both actions. That motion was filed in the Chapter 13 case of Brenda C. Stamper. The first issue to be decided is whether debtor Donald Stamper's obligation to pay certain joint debts incurred with his ex-wife, including the vehicle debt, and to hold her harmless for those obligations, is dischargeable. The second issue is whether the holder of a lien on such vehicle should be allowed to repos-

sess and sell it. The Court has jurisdiction over this pursuant to 28 U.S.C. § 1334(b), and may enter final Orders pursuant to 28 U.S.C. § 157(b)(2). This Order shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052.

Ms. Stamper and debtor married in 1978. They entered into a Separation Agreement on June 16, 1990, and their marriage was dissolved on July 25 of that year. The Separation Agreement provides that debtor will pay Ms. Stamper $200 per month as contractual maintenance, for a period of 4 years. The parties agree that this obligation is non-dischargeable.

The Separation Agreement also provides, in a separate section, that debtor is to assume certain joint obligations of the parties, and hold Ms. Stamper harmless for those debts. The adversary action centers around these hold harmless provisions. Chief among these provisions was debtor's agreement to assume the obligation due Colonial Acceptance, secured by a car which the parties agreed would be retained by Ms. Stamper. The Colonial Acceptance loan has since been assigned to movant Norwest. As to the car only, the Separation Agreement provides as follows:

"The 1987 Chrysler LeBaron automobile with a fair market value of $10,000.00 and a debt of $9,200.00 shall be set aside to Wife as her sole and separate property with the agreement Husband shall continue to make all payments on the 1987 LeBaron and to maintain insurance on same for the benefit of Wife until the balance is paid at which time the title will be assigned to Wife."

Ms. Stamper was not represented by counsel in the dissolution proceeding, and never met or spoke with the attorney who prepared the documents. She herself is now the debtor in a separate Chapter 13 proceeding. As part of that proceeding, Norwest has filed a motion seeking relief from the automatic stay to allow it to take possession of and sell the Chrysler LeBaron. Ms. Stamper has responded to such motion by asking the Court to require Mr. Stamper, the debtor in this case, to pay all

arrearages and to continue making all payments with respect to the 1987 Chrysler LeBaron. In analyzing this matter, I will first determine whether the debtor's hold harmless obligations to Ms. Stamper are dischargeable. To the extent they are found to be nondischargeable, I will then deal with the appropriate remedy available to her. Finally, I will consider Norwest's motion for relief from the automatic stay.

■ Pursuant to 11 U.S.C. § 523(a)(5), a debt to a former spouse is not dischargeable in bankruptcy if such debt is owed to a former spouse for alimony, maintenance, or support. In order to determine whether the award was in the nature of alimony, maintenance, or support, the Court must look to the intentions of the parties at the time that the decree was entered by the state court. *In re Rice*, 94 B.R. 617, 619 (Bkrtcy.W.D.Mo.1988). The Court will not necessarily be bound by the labels attached to the award by the state court, but will give weight to the findings of the prior Court. *In re Williams*, 703 F.2d 1055 (8th Cir.1983). The intent of the parties can best be found by examining three principal indicators. See, *In re Gianakas*, 917 F.2d 759 (3rd Cir.1990). First, the Court must examine the language and substance of the Agreement in the context of surrounding circumstances. But often, as here, neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy.

Because the language of the Agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to look at in ascertaining the parties' intent is their financial circumstances at the time of the settlement. Third, a Court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing, and transportation is indicative of a debt intended to be in the nature of support. See, *In re Yeates*, 807 F.2d 874, 879 (10th Cir.1986); *In re Gianakas*, supra.

■ The Separation Agreement provided for a division of the parties' personal property. Mr. Stamper agreed to make payments as to certain personal property, including the car, which was to be retained by Ms. Stamper. Once the car was paid for, he agreed to transfer his title interest in the car to her. Ms. Stamper testified that the agreement was set up this way because her income did not allow her to pay her ongoing living expenses and to pay the car and other payments as well. Mr. Stamper had income of $39,446.00 in 1990. Ms. Stamper, who is not a high school graduate, was at the time working as a clerk at K–Mart, with take home pay of approximately $600.00 per month. Her testimony shows that, based upon her income and expenses at the time of the Separation Agreement, she simply did not have the income to pay her living expenses as well as her car and other payments. According to Ms. Stamper, it was for that reason that Mr. Stamper agreed to make those payments. She testified that such payments were necessary to maintain her daily necessities of life, including transportation, and that therefore Mr. Stamper's obligation to make those payments, and to hold her harmless, was intended to be in the nature of support.

Mr. Stamper claims that as to the car loan, he assumed it not because of his wife's dire financial condition, but because he at the time felt it was his obligation since he had picked out the LeBaron and made the deal to buy it. Mr. Stamper further contends that it was his intent that the family residence be sold, and that the net proceeds from such sale after satisfaction of existing mortgages be used to pay the joint debts assumed by him. Ms. Stamper had vacated the family residence at the time of the separation. Mr. Stamper contends, therefore, that his assumption of these joint obligations was part and parcel of the property division, in that joint property was to be sold to pay those obligations. However, his contention is contrary to the language of the Separation Agreement which provides as follows:

## IV.

*Debts.*

Husband agrees to assume full responsibility for the payment of the following debts, and agrees to hold Wife harmless therefrom to wit: Associates Financial—$3,400; ITT Financial—$3,000; Norwest Financial $1,400; Sears—$2,000; Wards—$4,000; Visa—$875; Bencharge—$2,000; Colonial Acceptance—$9,000; GMAC (House Mortgage) $53,000. Husband further agrees to hold Wife's step-father harmless from payment of the Norwest Financial[1] and Associates Financial debts listed above and further agrees to pay off said debts from proceeds from the sale of the real estate mentioned in the Separation Agreement.

Of course, as it turned out, there was no equity from the sale of the residence with which to pay these other obligations. At least part of the reason was that Mr. Stamper refused to make any mortgage payments after entry of the Separation Agreement, thereby increasing the amount due on the mortgages so that no equity existed with which to pay the joint debts. In any event, the Agreement specifically provides only that obligations due Norwest Financial and Associates Financial will be paid out of the proceeds from the sale of the residence. There is nothing in the Agreement to indicate that the parties intended that any other obligations be satisfied solely out of proceeds from the sale of the residence.

■ Based on the above, I conclude that the debtor's obligation to hold his ex-wife harmless with respect to the car payment, and to maintain insurance on such vehicle, is non-dischargeable as support. Although the language of the Agreement does not specify whether such obligation is support or property settlement, the extrinsic evidence offered as to the parties' intent demonstrates that having a car was necessary for Ms. Stamper's support, that she couldn't pay for one on her existing wages, and that the parties knew it. Mr. Stamper's Income and Expense Statement, filed in Circuit Court, shows that in July 1990, the month of the Separation Agreement,

his gross monthly income was $3,760. He testified in Bankruptcy Court that his income that month was approximately $2,400. He had gross income of $43,781 in 1987; $46,258 in 1988; $54,160 in 1989; and $39,446 in 1990. In comparison, Ms. Stamper has been employed either as a cashier or a warehouse clerk. She does not have a high school diploma. From her net pay of approximately $600 per month, her rent of $325.00 per month and her other living expenses left her no funds with which to make a car payment or maintain insurance on such car. See, *Draper v. Draper*, 790 F.2d 52 (8th Cir.1986) (Support, Educational Expenses, and Medical and Dental Insurance Obligations found to be Non–Dischargeable). The same is not true, however, as to Mr. Stamper's agreement to hold Ms. Stamper harmless from other obligations, since much of the collateral securing the other obligations was either retained by Mr. Stamper, or returned to creditors. Therefore, the hold harmless obligation as to those debts other than the car loan due Norwest is not in the nature of maintenance or support, and is dischargeable.

Therefore, I have found that Mr. Stamper's obligation to hold Ms. Stamper harmless as to the debt due Norwest on the car, and to maintain insurance on such car is non-dischargeable. However, that does not mean that Mr. Stamper's direct obligation to Norwest is non-dischargeable, since Norwest itself has not asked that its debt be held non-dischargeable. All that I am finding is that Mr. Stamper's obligation to hold Ms. Stamper harmless is non-dischargeable, and that to the extent she makes payments to Norwest on the car loan or pays to insure such car, she is entitled to recover those payments from him as a non-dischargeable obligation. Ms. Stamper previously filed a Chapter 13 Plan which did not list the Norwest car loan and did not provide any payments to Norwest on that loan. Apparently, the Plan was filed that way because Ms. Stamper took the position that this Court should simply compel Mr.

---

**1.** Prior to its taking an assignment of the car loan from Colonial, Norwest had a separate loan to debtors which was apparently guaranteed by Mr. Stamper's step-father.

Stamper to make those payments. That I cannot do. Ms. Stamper should therefore file an Amended Chapter 13 Plan which lists Norwest as a creditor, and provides for treatment of the car loan due Norwest. To the extent that Ms. Stamper makes any payments to Norwest on that loan, or pays for insurance on that car, she is entitled under the Separation Agreement to seek reimbursement from Mr. Stamper as a non-dischargeable obligation. Ms. Stamper should file her Amended Plan within 7 days.

As to the motion of Norwest for relief from the automatic stay, such motion will be DENIED WITHOUT PREJUDICE at this time. Once an Amended Plan is filed, Norwest is free to file a new motion for relief based upon its treatment under such Plan. Separate Orders will be issued in each of the cases consistent with this Memorandum.