**Renata Rae HOGIE, Plaintiff and Appellee,**

v.

**Bradley Scott HOGIE, Defendant and Appellant.**

**No. 18512.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1994.

Decided Feb. 15, 1995.

may commence at the expiration of the imprisonment upon any other offense.

Patrick W. Kiner of Kiner Law Office, Mitchell, for plaintiff and appellee.

James D. Taylor of Taylor & Miskimins, Mitchell, for defendant and appellant.

PER CURIAM.

A former spouse appeals a circuit court order continuing his obligation to make certain payments under a decree of divorce despite his discharge in bankruptcy. We affirm in part, reverse in part and remand.

## FACTS

Bradley and Renata Hogie married in August 1979 and divorced in June 1992. They had one child. The decree, which incorporated the parties' oral stipulation, made Bradley responsible for certain marital debts and required him to hold Renata harmless from those obligations. The decree also required Bradley to make periodic cash payments to Renata. The salient terms of the divorce decree provided: (1) Bradley shall "assume and pay for all indebtedness concerning the accounts with the Firstline Account, the Visa charge card, and the Discover charge card, and ... hold [Renata] harmless from collection of any amounts due on said accounts;" (2) "that for purposes of equalizing the relative equities in property of the parties, [Bradley] shall pay to [Renata] the sum of $1,800.00 in cash, with a payment of $250.00 on the date of trial and the balance over a period of thirty-six months, with interest thereon at the rate of 12% per year, pursuant to an amortization schedule as secured by the parties;" (3) Renata "shall be granted exclusive ownership and control of the marital residence of the parties, subject to the debt thereon, and that [Renata] shall assume and pay such debt, and further [Renata] shall hold [Bradley] harmless from any liability for such debt, and further [Bradley] shall execute a quit-claim deed to [Renata] concerning his interest in that residence;" and (4) each party "shall retain the automobile in their possession at the time of trial, and further that [Renata] shall assume no debt on the vehicle she drives...."

On November 5, 1992, Renata filed an affidavit for an order to show cause. Bradley had filed for bankruptcy and had stopped making payments required by the divorce decree. Creditors were demanding that Renata pay the debts Bradley agreed to assume. Renata asked that Bradley be required to pay the debts set forth in the decree and also requested a ruling that the debts were in the nature of a support obligation, nondischargeable in bankruptcy. In a counter-affidavit, Bradley acknowledged filing a Chapter 7 bankruptcy petition and declared the debts he assumed under the divorce decree had been discharged.

At the show cause hearing on January 5, 1993, Renata testified that she waived a claim to Bradley's retirement account and waived alimony in exchange for his agreement to assume certain debts. The trial court entered findings of fact and conclusions of law determining the debts Bradley assumed under the hold harmless agreement and the required periodic payments to Renata were in the nature of support. Accordingly, the court ordered that Bradley be responsible for the debts he assumed in the divorce agreement and that he continue paying Renata the periodic payments required by the decree. Bradley appeals.

## WERE BRADLEY'S FINANCIAL OBLIGATIONS UNDER THE DIVORCE DECREE A PROPERTY SETTLEMENT DISCHARGEABLE IN BANKRUPTCY OR WERE THEY IN THE NATURE OF NONDISCHARGEABLE SUPPORT?

Federal law governs bankruptcy dischargeability. Debt to a "former spouse for alimony, maintenance, or support of the spouse or the couple's children which is memorialized in the divorce decree is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5)." *Matter of Coil*, 680 F.2d 1170, 1171 (7th Cir.1982). An obligation to pay debts in a decree of divorce which results from simply dividing marital assets and liabilities, however, is dischargeable. *Id.* In addition, "a 'hold harmless' provision, in and of itself, does not render an otherwise dischargeable debt nondischargeable." *Holt v. Holt*, 672 P.2d 738, 741 (Utah 1983).

The federal bankruptcy courts and any 'appropriate nonbankruptcy forum' have concurrent jurisdiction on issues of dischargeability under sections 523(a)(1), (3), (5), (7), (8), (9), and (10). *Id.; see 3 Collier on Bankruptcy* ¶ 523.15[6] at 523–126 (15th ed. 1993) ... Federal and state courts have concurrent jurisdiction to determine

whether an obligation is one for support or one for property division....

A contest to dischargeability of a debt claimed to be in the nature of alimony, maintenance, or support can be brought before or after a discharge has been granted to the debtor because there is no time limit for the filing of a complaint to determine the dischargeability of a type of debt listed as nondischargeable under section 523(a)(5) ...

A debtor or any creditor, i.e., a former wife, may file a complaint with the bankruptcy court to obtain a determination of dischargeability of debts arising under section 523(a)(5). If such a complaint seeking a specific determination of dischargeability is not filed, the issue of dischargeability may then be tried in the appropriate state court. The state court [has] concurrent jurisdiction over this action as to the dischargeability issue.

*Ziegenhorn v. Iowa Dist. Court,* 510 N.W.2d 894, 896–97 (Iowa Ct.App.1993) (citations and footnote omitted). *See also, In re Smith,* 125 B.R. 630 (Bankr.E.D.Okl.1991); *In re Galbreath,* 83 B.R. 549 (Bankr.S.D.Ill.1988); *In re Aldrich,* 34 B.R. 776 (Bankr. 9th Cir.1983); *Hopkins v. Hopkins,* 109 N.M. 233, 784 P.2d 420 (N.M.Ct.App.1989); *Long v. Long,* 102 N.C.App. 18, 401 S.E.2d 401 (1991).

In determining whether a debt to a spouse or a child is excepted from discharge, the analysis 'must begin with the assumption that dischargeability is favored under the [Bankruptcy] Code unless the complaining spouse, *who has the burden of proof,* demonstrates that the obligation at issue is "actually in the nature of alimony, maintenance or support." ' The complaining spouse 'has the burden to prove by a preponderance of the evidence that the debtor's liability should be excepted from discharge under § 523(a)(5).'

*Long,* 401 S.E.2d at 404–405 (emphasis original). *Accord, Ziegenhorn, supra; Hopkins, supra.*

Although domestic relations decisions traditionally abide within the province of state courts, for bankruptcy dischargeability purposes, "[w]hether a particular debt constitutes a maintenance or support obligation is an issue of federal, not state law." *Adams v. Zentz,* 963 F.2d 197, 199 (8th Cir. 1992). *See also Long, supra* (whether obligation is in nature of support or alimony is federal bankruptcy rather than state law question). *Accord Ziegenhorn, supra; Hopkins, supra.* State law, nonetheless, can provide some guidance, but "[s]ince state law only provides guidance, a debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *In re Yeates,* 807 F.2d 874, 878 (10th Cir.1986) (citing *In re Melichar,* 661 F.2d 300, 303 (4th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982)). These determinations are factual, reviewable on appeal under the clearly erroneous standard. *Adams, supra; Coil, supra; Hopkins, supra.* A finding is clearly erroneous when, after a review of all the evidence, this court is left with a definite and firm conviction that a mistake has been made. *Selle v. Pierce,* 494 N.W.2d 634 (S.D.1993).

We do not examine the parties' present circumstances to find the distinction between alimony awards and property distributions. "Rather, the crucial question is what function did the parties intend the agreement to serve when they entered into it." *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984).

Several courts have compiled a list of factors to consider in determining whether parties intended an obligation to be for support or part of a property settlement. These factors include the relative earning power of the parties and whether there was an imbalance of income; whether the agreement fails to explicitly provide for spousal support; whether there was a division of property and a division of debts related to that property; whether the payments are made directly to the former spouse and are made in installments over time; whether the obligation terminates on remarriage or death; the nature of the obligations assumed and whether the obligation is to pay expenses for necessities of life; whether the former spouse was shown to have suffered in the job market or was otherwise disadvantaged because of any

dependent position held in relation to the debtor during the marriage; the age and health of the former spouse, and, in cases involving an agreement to assume a debt and hold a spouse harmless, whether the provision assuming the debt appears in the midst of provisions allocating property and whether the provision describes the method of payment.

*Matter of Cline,* 114 B.R. 665, 667–68 (Bankr. D.Neb.1990). The parties' "intention is to be arrived at through the processes of construction and interpretation, not by reformation of the instrument." *Matter of Gebhardt,* 53 B.R. 113, 115 (W.D.Mo.1985).

In this case, we note the trial court's pertinent foundational findings: (a) Bradley earned approximately $20,000 per year at the time of the divorce agreement while Renata earned approximately $12,500 per year; (b) "had the parties only intended their agreement to be in the nature of a property settlement, there would have been a relatively disproportionate inability to pay on the part of [Renata];" (c) Renata "did not receive any payment on [Bradley's] retirement account which the Court finds support in the finding that the assumption of debt by [Bradley] and payments to [Renata] were in the nature of support and not property settlement;" (d) Renata had a smaller income than Bradley and, therefore, the parties intended their agreement concerning periodic payments on the $1,800 obligation, plus interest, to be in the nature of support, regardless of how it was designated in the agreement; (e) Renata needs support from her own earnings and the periodic payments from Bradley in order to maintain herself and the minor child in her custody; (f) Renata also needs Bradley to pay the debts he agreed upon in order to maintain herself and the child; (g) Bradley's debt assumption was in the nature of support regardless of the designation contained in the agreement; (h) Renata's and the child's needs "demonstrate the agreement in this case classifies the periodic payment due to [Renata] and the debts assumed by [Bradley] to be in the nature of support;" and (i) "That until there is showing of income above and beyond that required to maintain and support a living for parent and child, that person's intent naturally and consequently is basically and foremost going to be support and in the nature of getting by and providing needs on a day-to-day basis, which is clearly the situation in the case at hand."

■ Our review of the court's findings suggest that the key reason for the trial court's decision was that Renata and the child needed Bradley's periodic payments and debt assumption under the hold harmless agreement to sustain themselves.

> The spouse's need for support is a very important factor in determining the intent of the parties. When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the [nondebtor spouse] to maintain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.

*Yeates,* 807 F.2d at 879. Yet while a need for support at the time of the divorce is certainly an appropriate consideration, it is only one factor in determining whether the parties' intent in creating a divorce obligation was part of a property division or in the nature of support. *See Boyle, supra,* which effectively rejected the "present needs" test adopted in the case of *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983).

■ Considering the recitations from the decree which adopted the parties' agreement together with other applicable factors previously set forth reveals the following:

1. The imbalance in income between the parties and the lack of any explicit provision on spousal support in light of Bradley's assumption of the marital debts tend to show that the debt assumption and periodic payments were in the nature of support and not purely a property division. Bradley's monthly payments on the debts and direct payments to Renata would tend to balance the parties' disparate incomes. *In re Cummings,* 147 B.R. 747 (Bankr. D.S.D.1992); *In re Montgomery,* 169 B.R. 442 (Bankr.M.D.Fla.1994).

2. Renata's testimony that she waived any claim to alimony in exchange for Bradley's debt assumption and periodic payments, together with the absence

in the divorce decree of a specific provision on spousal support also favors a determination of nondischargeable support.

3. Although there was a division of property, there was no division of debts related to that property. Bradley assumed all marital debts with the exception of the home mortgage debt Renata assumed. The lack of a provision for spousal support in light of Bradley's full assumption of marital debt would also appear to favor a determination that the debt assumption and periodic payments were in the nature of nondischargeable support.

4. The debt payments Bradley assumed were not paid directly to Renata but to the creditors for past purchases of material goods, not for expenses related to ongoing support, suggesting a property-debt allocation. *Cline*, 114 B.R. at 668. On the other hand, an agreement or order to pay creditors may serve as an equivalent of support. *See In re Dirks*, 15 B.R. 775 (Bankr. D.N.M.1981); *Hopkins v. Hopkins*, 487 A.2d 500 (R.I.1985). Here the decree specifically stated that Renata "shall assume no debt on the vehicle she drives." Bradley assumed the remaining monthly payments on Renata's car when he agreed to pay the Firstline account which balance was partially incurred to purchase the car Renata received per the agreement. *See In re Stamper*, 131 B.R. 433 (Bankr.W.D.Mo.1991). This tends to indicate that at least a portion of the debt assumption was for Renata's support, especially considering that Renata had insufficient income to pay the monthly amounts due on the credit card debts.

5. Bradley's periodic payments go directly to Renata and in installments over time. While that might favor a determination that they were in the nature of support, the payments do not terminate on Renata's remarriage or death, thus tending to indicate a property distribution as opposed to support. *In re Morel*, 983 F.2d 104 (8th Cir.1992).

6. The decree specifically recited that Bradley's periodic payments to Renata totaling $1,800 were to "[equalize] the relative equities in the property of the parties[.]" This recitation, though not controlling, obviously favors a conclusion that the periodic payments were in the nature of property division and not support. *But cf., Hopkins*, 487 A.2d at 504 (finding debts nondischargeable when recitation in judgment stated that debt assumption was "as a condition of the waiver of alimony.") No such recitation can be found in the present record.

7. Absent from the record is any showing that Renata suffered in the job market or was disadvantaged because of a dependent position she held during the marriage. This would favor a finding of property division over support.

8. Nothing in the record indicates that Renata's age or health status warrants support.

9. The hold harmless language, the assumption of debt and the periodic payments are contained in the midst of the decree's property settlement provisions. This favors a determination that these obligations were incurred for purposes of property division and not support.

A number of factors support the trial court's conclusions on the debt assumption and hold harmless provisions. Others do not. Of course, courts cannot simply tally these factors to ascertain the nature of an award. *In re Ellis*, 149 B.R. 927 (Bankr.E.D.Mo.1993). In determining the parties' intent, the choice of factors the trial court uses, their hierarchy, and the weight they should be accorded is committed to the court's discretion. *In re McCauley*, 105 B.R. 315 (E.D.Va.1989). In view of these circumstances, we cannot say the trial court was clearly erroneous in finding that Renata proved by a preponderance of the evidence that the debts Bradley assumed under the hold harmless agreement were in the nature of support.

On the other hand, the provision dealing with the periodic payments due Re-

nata totaling $1,800 had all the earmarks of a property distribution: The award was not terminable on any contingency such as death or remarriage; it bore interest; it was contained in the midst of provisions dealing with property division; and the decree specifically provided that the payments were to equalize the parties' property equities. Under federal law the labels the court or parties use in describing awards will not control a property-alimony characterization, but courts give some deference to these labels, "as persuasive evidence of intent." *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986). When a divorce agreement or decree, "clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *Yeates*, 807 F.2d at 878. Moreover, to interpret this provision otherwise would render clear expression meaningless and subvert the "parties' interest in being able to plan their post-divorce obligations." Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 15.1 at 595 (2d ed. 1988).*

Accordingly, we affirm the order holding Bradley responsible for the debts he assumed in the hold harmless agreement, but reverse and remand that portion of the order which requires him to continue making the periodic payments to Renata because that obligation has been discharged in bankruptcy.

### ATTORNEYS FEES

Renata's attorney filed a motion for an award of appellate attorney fees in the amount of $777.35. The motion is accompanied by an itemized statement of costs incurred and legal services rendered. *See Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985). The factors considered in awarding appellate attorney fees are: the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case. *Parsons v. Parsons*, 490 N.W.2d 733 (S.D.1992). Renata was award-

ed the parties' home which she subsequently sold for a gain of $13,000. Renata does not appear to have any other significant income producing property. Renata is employed full time and her annual gross salary is $11,520. Bradley is employed as a school teacher and currently grosses slightly over $21,000 per year. Neither party alleges the other has unreasonably increased the time spent on this case. Considering these factors we award attorney's fees to Renata in the amount of $777.35. *See Struck v. Struck*, 417 N.W.2d 382 (S.D.1987) (attorney's fees awarded to nonprevailing party on appeal in divorce case).

Affirmed in part, reversed in part and remanded.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., and WUEST, Retired Justice, participating.

---

* According to Professor Clark, "lawyers can take some steps to vindicate their clients' purposes. The agreement or decree should clearly label the payments, should contain provisions covering both alimony and property, if only nominal ones for either, and should spell out whether either award is modifiable on death or remarriage or other eventuality." *Clark*, § 15.1 at 595.